# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 5, 2011 Session

## CITY OF HARRIMAN, TENNESSEE v.
## ROANE COUNTY ELECTION COMMISSION ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section
Chancery Court for Roane County
No. 16,010      Frank V. Williams III, Chancellor**

---

**No. E2008-02316-SC-R11-CV - Filed June 9, 2011**

---

Two municipalities sought to annex the same territory outside the urban growth boundaries for both municipalities set forth in the county's growth plan. One municipality attempted to annex territory that was not within its urban growth boundary by proposing an amendment to the county growth plan and enacting an ordinance annexing the territory. A second municipality annexed the same territory by an annexation referendum pursuant to Tennessee Code Annotated sections 6-51-104 to -105 and 6-58-111(d)(2). We granted permission to appeal in this case to address the application of Tennessee Code Annotated sections 6-58-101 to -116 to these municipalities' annexation efforts. After considering the related statutes, we hold that Tennessee Code Annotated section 6-58-111 requires an amendment to the county growth plan for a municipality to effect an annexation of territory beyond its urban growth boundary by ordinance. We reverse the judgment of the Court of Appeals and reinstate the chancery court's order dismissing the case.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Court of Appeals Reversed**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Jack H. McPherson Jr., Kingston, Tennessee, and Thomas M. Hale, Knoxville, Tennessee, for the appellant, City of Kingston, Tennessee.

Harold D. Balcom Jr., Kingston, Tennessee, for the appellee, City of Harriman, Tennessee.

**OPINION**

I. Facts and Procedural History

Tennessee Code Annotated sections 6-58-101 to -116 ("Chapter 58") establish procedures by which a county must develop and adopt a countywide growth plan for land use decisions within the county, including annexations by municipalities. E.g., Tenn. Code Ann. § 6-58-107 (2005). A county's growth plan establishes urban growth boundaries for each municipality in the county. Tenn. Code Ann. § 6-58-107. A municipality's urban growth boundary demarcates the area in which the municipality is projected to grow and in which the municipality's annexation of territory is presumptively reasonable. See Tenn. Code Ann. §§ 6-58-106(a)(1), -111(a)(1) (2005); State ex rel. Tipton v. City of Knoxville, 205 S.W.3d 456, 460-61 (Tenn. Ct. App. 2006). This appeal concerns the procedures by which a municipality may annex territory beyond its urban growth boundary.

Pursuant to Tennessee Code Annotated section 6-58-104, Roane County adopted a growth plan drafted by the Roane County coordinating committee ("coordinating committee") (2005 & Supp. 2010). The City of Harriman ("Harriman") sought to amend the Roane County growth plan to modify its urban growth boundary. Harriman requested that the coordinating committee, which also drafts amendments to the growth plan proposed by municipalities, reconvene to discuss revising the county's growth plan. Tenn. Code Ann. § 6-58-104(d)(1).

The coordinating committee held several meetings in 2005 and 2006 and discussed a number of proposed urban growth boundaries, but the committee took no action. On September 12, 2007, the Roane County mayor announced that the coordinating committee would reconvene within six weeks. The county mayor requested that municipalities in Roane County seeking to alter their growth boundaries submit proposed amendments to the committee.

In response, the Harriman City Council acted in special session on October 17, 2007, to adopt Resolution Number R1007-1, which designated a proposed amendment to its urban growth boundary to include a portion of Midtown that it wished to annex. Although Harriman submitted the proposed amendment to the coordinating committee, the coordinating committee did not meet following Harriman's submission.

On December 27, 2007, the City Council for the City of Kingston ("Kingston") adopted a resolution to hold a referendum to annex a portion of Midtown identified by Harriman in Resolution Number R1007-1. Tennessee Code Annotated section 6-58-111(d)(2) permitted a municipality to annex territory not included in its urban growth

boundary "by referendum as provided in §§ 6-51-104 and 6-51-105."[1] The referendum was scheduled for February 5, 2008.

More than a week before the referendum, the Harriman City Council adopted on first reading an ordinance annexing the part of Midtown at issue. Harriman subsequently filed a complaint in chancery court against Kingston and the Roane County Election Commission. The complaint sought to hold Kingston's annexation referendum in abeyance while Harriman's annexation proceedings were pending. Harriman also requested a temporary restraining order prohibiting the Roane County Election Commission from conducting the referendum. After the chancery court declined to grant the restraining order, Harriman moved for a temporary injunction to prohibit the commission from certifying the referendum results. The motion for an injunction was not granted.[2] The referendum proceeded, and the voters approved Kingston's annexation of the portion of Midtown both cities wished to annex. The election commission certified the referendum results on February 5, 2008.

Kingston answered Harriman's complaint, and the chancery court held a hearing on June 10, 2008. Harriman and Kingston submitted a stipulation of facts to the chancery court. With the agreement of Harriman and Kingston, the chancery court dismissed Harriman's complaint against the Roane County Election Commission as moot. The chancery court also dismissed Harriman's complaint against Kingston because it concluded that Chapter 58 does not permit a municipality to use an ordinance to annex territory that is beyond its urban growth boundary. The chancery court therefore held that Harriman's annexation ordinance was void and created no conflict with Kingston's successful annexation of the same territory by referendum.

On appeal, the Court of Appeals reversed the chancery court's judgment and remanded to the chancery court for further proceedings. We granted Kingston permission to appeal.

## II. Analysis

Harriman contends that its effort to annex Midtown has priority because of its larger population.[3] The threshold issue, however, is whether Chapter 58 permits a municipality

---

[1] In 2010, the General Assembly amended and recodified Tennessee Code Annotated section 6-58-111(d)(2) as Tennessee Code Annotated section 6-58-111(c)(2). Act of May 26, 2010, pub. ch. 917, §§ 2-3, 2010-2 Tenn. Code Ann. Adv. Legis. Serv. 493, 493 (LexisNexis).

[2] The record does not include a disposition of Harriman's motion for a temporary injunction.

[3] Tennessee Code Annotated section 6-51-110(b) (2005) states:

(continued...)

such as Harriman to annex territory by ordinance when the territory is outside the municipality's urban growth boundary.

Tennessee Code Annotated section 6-58-111(a) confers on each municipality the "exclusive authority to annex territory located within its approved urban growth boundaries," and it prohibits each municipality from annexing territory within another municipality's urban growth boundary. The statute states further:

> (c)     A municipality may not annex territory by ordinance beyond its urban growth boundary without following the procedure in subsection (d).
> (d)(1) If a municipality desires to annex territory beyond its urban growth boundary, the municipality shall first propose an amendment to its urban growth boundary with the coordinating committee under the procedure in § 6-58-104.

Tenn. Code Ann. § 6-58-111(c), (d)(1).[4]

---

[3] (...continued)

If two (2) municipalities that were incorporated in the same county shall initiate annexation proceedings with respect to the same territory, the proceedings of the municipality having the larger population shall have precedence and the smaller municipality's proceedings shall be held in abeyance pending the outcome of the proceedings of such larger municipality.

[4] In 2010, the General Assembly amended Tennessee Code Annotated section 6-58-111 to delete section (d) and state:

(c)(1) Prior to a municipality annexing by ordinance territory outside its existing urban growth boundary whether the territory desired for annexation is within another municipality's urban growth boundary or a county's planned growth area or rural area, it must first amend the growth plan by having its desired change to the urban growth boundary submitted to the coordinating committee and then receive a recommendation for or against the amendment from the coordinating committee, the coordinating committee then must submit the proposed amendment with its recommendation to all the legislative bodies for approval. If the amendment to the growth plan is approved by the legislative bodies or by the dispute resolution panel, it is then submitted to the local government planning advisory committee for its approval. This amendment process must follow the procedure as outlined in § 6-58-104 and the criteria for establishing an urban growth boundary as delineated in § 6-58-106.
(2) As an alternative to a municipality annexing in a county's planned growth area or rural area by first amending the growth plan as described in subdivision (c)(1), a municipality may annex within a county's planned growth area or rural area, but the annexation must be by referendum only and not by ordinance. The municipality must follow the referendum process as provided for in §§ 6-51-104 and 6-51-105.

(continued...)

The chancery court concluded that Tennessee Code Annotated section 6-58-111(d)(1) required the coordinating committee to amend the county's growth plan to include the desired territory in the municipality's urban growth boundary before the municipality may annex the territory by ordinance. Harriman proposed the amendment, but the coordinating committee failed to complete the amendment process. The chancery court therefore held that the annexation ordinance was void.

The Court of Appeals disagreed with the chancery court's construction of Tennessee Code Annotated section 6-58-111. The intermediate appellate court stated that Tennessee Code Annotated section 6-58-111 provides a "general rule" and an "exception." City of Harriman v. Roane Cnty. Election Comm'n, No. E2008-02316-COA-R3-CV, 2009 WL 5083477, at *4 (Tenn. Ct. App. Dec. 28, 2009). The general rule is that "a municipality must confine its growth to the territory within its urban growth boundary," and the exception is that "by 'following the procedure in subsection (d)' a 'municipality may . . . annex territory by ordinance beyond its urban growth boundary.'" Id. at *4-5 (alteration in original) (quoting Tenn. Code Ann. § 6-58-111(c), (d)(1)). To qualify for the exception, the Court of Appeals held that a municipality need only "'propose an amendment to its urban growth boundary with the coordinating committee.'" Id. at *6 (emphasis omitted) (quoting Tenn. Code Ann. § 6-58-111(d)(1)). Harriman proposed an amendment pursuant to Tennessee Code Annotated section 6-58-104(d)(1) "by filing notice with the county mayor and with the mayor of each municipality in the county." The Court of Appeals concluded that Tennessee Code Annotated section 6-58-111(d)(1) permitted Harriman's annexation ordinance. Id. at *7.

"The construction of a statute and its application to the facts of a case are questions of law, which we review de novo." Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010). When construing a statute, our aim is to give the statute the effect intended by the legislature without unduly restricting or expanding the statute's intended scope. Id. (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). "We find the General Assembly's intent in the plain and ordinary meaning of the statute's language if the language is unambiguous." State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010).

The Court of Appeals observed that the ordinary meaning and purpose it attributed to the words of section 6-58-111 resulted in a construction that "defeats the policies behind" Chapter 58. City of Harriman, 2009 WL 5083477, at *7. The construction of a single subsection should not violate the General Assembly's stated intent. See In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005) (quoting Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968)) (stating that the plain meaning of the statute's language should be given full effect "'if so doing does not violate the obvious intention of the Legislature'"). We instead are compelled to avoid a construction that places one statute in conflict with another and to

[4] (...continued)
Act of May 26, 2010, pub. ch. 917, §§ 2-3.

construe statutes "'to provide a harmonious operation of the laws.'" Graham v. Caples, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995)); see Wilson v. Johnson Cnty., 879 S.W.2d 807, 809 (Tenn. 1994) (stating that we are to construe together statutes "relating to the same subject or having a common purpose"). We therefore consider the language of Tennessee Code Annotated section 6-58-111 in the context of the entirety of Chapter 58.

The General Assembly enacted Tennessee Code Annotated sections 6-58-101 to -116 "to establish a comprehensive growth policy for" Tennessee. Tenn. Code Ann. § 6-58-102 (2005). Chapter 58 provides incentives for appropriate annexation or incorporation that correspond with "the timing of development and the provision of public services." Tenn. Code Ann. § 6-58-102(2)-(3). The General Assembly also intended the growth policy to "[e]liminate[] annexation or incorporation out of fear" and to "[m]inimize urban sprawl." Tenn. Code Ann. § 6-58-102(1), (5).

Chapter 58 regulates annexation and incorporation by requiring each county to adopt a countywide growth plan and dictating that land use decisions in the county "be consistent with the growth plan." Tenn. Code Ann. § 6-58-107. Chapter 58 establishes a coordinating committee in each county, including representatives of the county mayor and of the mayor of each municipality in the county and requires that the committee draft a growth plan in consultation with the county legislative body and the governing body of each municipality. Tenn. Code Ann. § 6-58-104(a). The county legislative body and the governing body of each municipality must ratify the proposed growth plan. Tenn. Code Ann. § 6-58-104(a)(2), (b)(1), (c)(1). If the county or any municipality rejects a recommended growth plan proposed by the coordinating committee or a revised growth plan subsequently proposed by the coordinating committee, the county or any municipality may declare an impasse, and a dispute resolution panel must be convened to resolve the impasse and assist the county in adopting a consensus growth plan. Tenn. Code Ann. § 6-58-104(b)(1)–(3); see generally City of Alcoa v. Tenn. Local Gov't Planning Advisory Comm., 123 S.W.3d 351, 352-53 (Tenn. Ct. App. 2003).

A growth plan must describe and depict municipal corporate limits, urban growth boundaries, any planned growth areas, and any rural areas in the county. Tenn. Code Ann. § 6-58-107. Territory included in a municipality's urban growth boundary must be reasonably sized to accommodate the municipality's residential and nonresidential growth over twenty years, and it must be contiguous to the municipality's corporate limits. Tenn. Code Ann. § 6-58-106(a)(1)(A)–(B). In addition, the territory included in an urban growth boundary must be territory that a reasonable person knowledgeable of the area's history, economy, demographics, and topography would project as the likely site of high density commercial, industrial, or residential growth. Tenn. Code Ann. § 6-58-106(a)(1)(C). An urban growth boundary also should include territory in which the municipality is able and prepared to provide urban services more efficiently and effectively than other municipalities.

Tenn. Code Ann. § 6-58-106(a)(1)(D).  Although a municipality may develop and propose to the committee its preferred urban growth boundary, Tenn. Code Ann. § 6-58-104(a)(2), the county and all municipalities in a county must approve each municipality's urban growth boundary as part of the county's growth plan.  See Tenn. Code Ann. §§ 6-58-104(a)(2), (b)(1), -106(a)(2).

Chapter 58 prohibits a municipality from unilaterally altering its urban growth boundary.  A municipality instead must propose amendments to its urban growth boundary to the coordinating committee "by filing notice with the county mayor and with the mayor of each municipality in the county" and may do so only after the county growth plan has been in effect for three years, "absent a showing of extraordinary circumstances."  Tenn. Code Ann. § 6-58-104(d)(1).  When amending a growth plan, the coordinating committee must follow the same procedures used to establish the original growth plan.  Tenn. Code Ann. § 6-58-104(d)(1).  The coordinating committee therefore must again give due consideration to the proposal of the county legislative body and each municipal governing body, Tenn. Code Ann. § 6-58-104(a)(2), and all parties must ratify the amended growth plan.  Tenn. Code Ann. § 6-58-104(c)(1), (d)(1).

Against this legislative backdrop, we conclude that Tennessee Code Annotated section 6-58-111(d)(1) does not permit a municipality to annex territory outside its urban growth boundary by ordinance.  Tennessee Code Annotated section 6-58-111(c) instructs municipalities that they may not use an ordinance to annex territory beyond their urban growth boundaries "without following the procedure in subsection (d)."  Tennessee Code Annotated section 6-58-111(d)(1) requires that a municipality desiring to annex territory beyond its urban growth boundary "shall first propose an amendment to its urban growth boundary with the coordinating committee under the procedure in § 6-58-104."  Unlike the Court of Appeals, we do not interpret the requirement to "first propose an amendment" as the final step required by the municipality seeking to annex territory. Section 6-58-104(d)(1) sets forth other steps that must be taken by the municipality.  The municipality proposing the change must prove "the reasonableness of the proposed amendment."  Tenn. Code Ann. § 6-58-104(d)(1).  In addition, to amend the growth plan, the coordinating committee must complete the same procedures "for establishing the original plan," Tenn. Code Ann. § 6-58-104(d)(1), which requires all municipalities and the county government to agree as to an amended growth plan.  Tenn. Code Ann. § 6-58-104(a)(2), (b), and (c)(1).  Only after the amendment procedure is complete may a municipality annex the subject territory by ordinance.  Municipalities desiring to avoid amending the county growth plan may hold an annexation referendum, the alternative method for a municipality's annexation of territory beyond its urban growth boundary.  Tenn. Code Ann. § 6-58-111(d)(2).

This construction satisfies the intent of the General Assembly and avoids undermining or creating conflict with other sections in Chapter 58.  Because Harriman did not complete the process of amending its urban growth boundary to include Midtown, we hold that

Harriman's annexation ordinance is void and creates no conflict with Kingston's annexation referendum.

## III. Conclusion

We hold that Tennessee Code Annotated section 6-58-111(d)(1) does not permit a municipality to annex territory outside its urban growth boundary by ordinance. Harriman's ordinance annexing a portion of Midtown beyond its urban growth boundary therefore is void and creates no conflict with Kingston's annexation by referendum. We reverse the judgment of the Court of Appeals and reinstate the judgment of the chancery court dismissing Harriman's complaint against Kingston. Costs are assessed against the appellee, the City of Harriman, and its surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE