IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 31, 2013 Session

# E. RON PICKARD ET AL. v. TENNESSEE WATER QUALITY CONTROL BOARD ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 09-2298-III     Ellen Hobbs Lyle, Chancellor**

**No. M2011-02600-SC-R11-CV - Filed December 17, 2013**

This appeal involves the proper procedure for persons desiring to obtain administrative and judicial review of a decision by the Tennessee Department of Environment and Conservation ("TDEC") regarding the issuance or denial of a waste water and storm water discharge permit. After TDEC issued a final permit allowing the operator of a limestone quarry to discharge water into Horse Creek, the owners and managers of a neighboring wildlife sanctuary filed a petition with the Tennessee Water Quality Control Board ("Board") seeking to appeal TDEC's decision to issue the permit and also requesting the Board to issue a declaratory order regarding the proper interpretation of the Antidegradation Rule, Tenn. Comp. R. & Regs. 1200-04-03-.06. After the Board scheduled a contested case hearing, an administrative law judge dismissed the request for a declaratory order on the ground that Tenn. Code Ann. § 69-3-105(i) (2012) provides the exclusive procedure to obtain administrative review of TDEC's decision to issue the discharge permit. Rather than pursuing the permit appeal already pending before the Board, the wildlife sanctuary filed a petition in the Chancery Court for Davidson County seeking a declaratory judgment regarding the proper interpretation of the Antidegradation Rule. The trial court granted the wildlife sanctuary's motion for summary judgment and issued a declaratory judgment regarding the interpretation and application of the Antidegradation Rule to the permit at issue in this case. TDEC and the Board appealed. The Court of Appeals reversed the summary judgment on the ground that the trial court had failed to give "any deference to TDEC's interpretation of the Antidegradation rule" and remanded the case to the trial court to conduct a trial "to determine the proper interpretation of the Antidegradation rule." *Pickard v. Tennessee Dep't of Env't and Conservation*, No. M2011-02600-COA-R3-CV, 2012 WL 3834777, at *24-25 (Tenn. Ct. App. Sept. 4, 2012). We granted the Board's and TDEC's joint application for permission to appeal. We conclude that Tenn. Code Ann. § 69-3-105(i) disallows parties challenging the issuance of a discharge permit from seeking a declaratory order from the Board regarding matters involved in the issuance of the permit and requires

that parties desiring to seek judicial review of a decision to issue a discharge permit must first exhaust their administrative remedies before seeking judicial review of TDEC's decision. Because the wildlife sanctuary's appeal from TDEC's issuance of the discharge permit was still pending before the Board, the trial court should have declined to adjudicate the wildlife sanctuary's petition for a declaratory judgment. Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded to the trial court with directions to dismiss the petition because the wildlife sanctuary failed to exhaust its administrative remedies before the Board.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Elizabeth P. McCarter, Senior Counsel; Patrick N. Parker, Assistant General Counsel, for the appellants, Tennessee Water Quality Control Board and Tennessee Department of Environment and Conservation.

Elizabeth L. Murphy and W. David Bridgers, Nashville, Tennessee, for the appellees, E. Ron Pickard and Linda Pickard.

**OPINION**

**I.**

The Horse Creek Wildlife Sanctuary and Animal Refuge ("Sanctuary") consists of over 2,500 acres of forested land, streams, and ponds in Hardin County near the city of Savannah. The Sanctuary is managed and operated by the Sharon Charitable Trust and is made available to churches, civic groups, and other organizations for retreats, excursions, and other outdoor activities. The recreational facilities available at the Sanctuary include the Rock House Lodge and two camping areas on Horse Creek.

Tennessee Materials Corporation decided to operate a limestone quarry on a tract of undeveloped land across Highway 69 from the Sanctuary. The property is less than one-half mile from Horse Creek. It is bordered on the west by Buck Branch and on the east by Pyburn Creek. Both of these streams flow into Horse Creek upstream from the Sanctuary's property.

In June 2007, Tennessee Materials applied to TDEC for a permit to discharge water from its quarry.[1] In February 2008, Amy Fritz, a state biologist, conducted a survey of Horse Creek, and TDEC reported the results of this survey in May 2008. Although a copy of this survey is not in the record, the parties appear to agree that Ms. Fritz determined that Horse Creek had a Biological Index Score that rendered the stream "slightly impaired" and a Habitat Score that rendered the stream "moderately impaired." Nevertheless, TDEC decided that Horse Creek did not require an elevated degree of protection. Accordingly, on August 6, 2008, TDEC issued a draft permit for Tennessee Materials's quarry for public comment.[2]

E. Ron Pickard and Linda Pickard, the trustees of the Sharon Charitable Trust, opposed the draft permit. They objected to the permit in writing and also expressed their concerns at a public meeting in October 2008 organized by TDEC. The Pickards argued that the draft permit was invalid because TDEC had misinterpreted and misapplied the Antidegradation Rule.

In addition, the Pickards filed a petition with the Board in January 2009 seeking a declaratory order[3] regarding the "proper interpretation and application" of the Antidegradation Rule.[4] In mid-February 2009, the Board declined to convene a contested case hearing to consider the Pickards' petition for a declaratory order because a hearing would be premature. The Board explained that "the permit at issue has not been issued or denied therefore there is no final administrative action by the Commissioner." The Board also explained that it was not considering the petition for a declaratory order at that time in order "to maintain the delegated responsibilities of the Division and the Board; to prevent against the Board rendering impermissible advisory opinions based on hypothetical facts; and to protect the waters and citizens of the [S]tate of Tennessee."

Thereafter, TDEC issued Tennessee Materials a final discharge permit in mid-March 2009. This action prompted the Pickards to seek two forms of administrative relief from the

---

[1] The permit is technically a National Pollutant Discharge Elimination System ("NPDES") permit. NPDES permits must comply with the federal Clean Water Act, 33 U.S.C. §§ 1251-1387 (2012).

[2] *See* Tenn. Comp. R. & Regs. 1200-04-05-.06 (2007) (requiring the Commissioner to submit a draft permit for thirty days of public comment and providing for public hearings on a proposed permit).

[3] Tenn. Code Ann. § 4-5-223(a) (2011) permits "[a]ny affected person" to "petition an agency for a declaratory order as to the validity or applicability of a statute, rule, or order within the primary jurisdiction of the agency."

[4] The Pickards insisted that "TDEC's interpretation guts the Anti-Degradation Rule" and that TDEC's decision to issue the permit despite the stream's impairment "lacks an articulated basis in fact or reason."

final permit. On April 6, 2009, they filed a direct appeal with the Board challenging the issuance of the permit in accordance with Tenn. Code Ann. § 69-3-105(i).[5] Second, they again requested the Board to issue a declaratory order regarding the proper interpretation and application of the Antidegradation Rule.

The Board scheduled a contested case hearing on the Pickards' petitions for October 20-21, 2009. Prior to the hearing, TDEC moved to dismiss the Pickards' request for a declaratory order on the ground that Tenn. Code Ann. § 69-3-105(i) provided the exclusive means for obtaining administrative review of TDEC's issuance or denial of a permit. An administrative law judge granted TDEC's motion on October 6, 2009. As far as this record shows, the Board's contested case hearing scheduled for October 20-21, 2009 was never held. Thus, the Pickards' direct appeal pursuant to Tenn. Code Ann. § 69-3-105(i) remains pending and undecided before the Board at this time.

Rather than proceeding with the scheduled hearing before the Board, the Pickards decided to fight Tennessee Materials's discharge permit on another front. On December 4, 2009, they filed two petitions in the Chancery Court for Davidson County. The first petition sought judicial review of the administrative law judge's dismissal of their earlier request for a declaratory order. The second petition sought a declaratory judgment in accordance with Tenn. Code Ann. § 4-5-225 (2011).[6] This appeal is limited solely to the latter petition.

The parties litigated this case for almost two more years in the trial court. On April 11, 2011, the trial court filed its first Memorandum and Order applicable to both petitions. The court decided that the administrative law judge had erred by dismissing the Pickards' petition for a declaratory order. Based on this decision, the trial court also decided that the Pickards' petition for a declaratory judgment was moot. The court then set another hearing to determine the appropriate remedy for the administrative law judge's erroneous dismissal of the Pickards' petition for a declaratory order.

The parties had markedly different reactions to the trial court's order. TDEC and the Board observed that the order "recognizes that, because of the jurisdictional question below, the Board cannot be said to have refused to hear the petition for declaratory order." The Pickards insisted that their pending petition for declaratory judgment should not be dismissed

---

[5]See also Tenn. Comp. R. & Regs. 1200-04-05-.12 (2007).

[6]Unless "otherwise specifically provided by statute," Tenn. Code Ann. § 4-5-225 permits the filing of a petition for declaratory judgment with regard to the "legal validity or applicability of a statute, rule or order of an agency to specified circumstances." Tenn. Code Ann. § 4-5-225(a). However, these petitions may be filed only after the petitioner "has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order." Tenn. Code Ann. § 4-5-225(b).

but rather should be held in abeyance while the companion case was remanded to the Board for a final opportunity to determine whether it would address their Antidegradation Rule claims.

On May 10, 2011, the trial court entered separate Memorandums and Orders in the two cases. In the proceeding challenging the administrative law judge's dismissal of the Pickards' petition for a declaratory order, the trial court changed its mind about remanding the case to the Board based on its conclusion that the Board had "refused, pursuant to Tenn. Code Ann. § 4-5-223(a)(2), to consider the claim for declaratory relief,[7] and that claim is pending before this Court for disposition."[8] In the proceeding seeking a declaratory judgment under Tenn. Code Ann. § 4-5-225, the trial court decided that the petition for a declaratory judgment was not moot.[9]

On August 2, 2011, the Pickards filed a motion for summary judgment with regard to their petition for a declaratory judgment. They asserted that the undisputed facts established: (1) that they had standing because they had a legally recognized interest in Horse Creek; (2) that the case presented a justiciable controversy; (3) that, "[w]hen unavailable conditions exist, the Antidegradation rules require a scientifically-sound process to determine if a proposed new discharge will 'cause or contribute' to the existing, documented conditions of impairment;" (4) that the Antidegradation Rule "is invalid and violates the Tennessee Water Quality Control Act" if it does not require "such a [scientifically sound] process;" and (5) that TDEC's application of the Antidegradation Rule without using "such a [scientifically sound] process" violated the Antidegradation Rule and the Tennessee Water Quality Control Act.

---

[7]It is unclear whether the trial court was referring to the Board's February 18, 2009 order or the administrative law judge's October 6, 2009 order.

[8]TDEC and the Board appealed this decision. Rather than addressing whether Tenn. Code Ann. § 69-3-105(i) precludes the filing of a petition for declaratory order under Tenn. Code Ann. § 4-5-223, the Court of Appeals decided that the courts lacked subject matter jurisdiction to review, under Tenn. Code Ann. § 4-5-322, an agency's decision not to issue a declaratory order authorized by Tenn. Code Ann. § 4-5-223. *Pickard v. Tennessee Dep't of Env't & Conservation*, No. M2011-01172-COA-R3-CV, 2012 WL 3329618, at *1 (Tenn. Ct. App. Aug. 14, 2012) (No Tenn. R. App. P. 11 application filed).

[9]The Board sought the trial court's permission to pursue a Tenn. R. App. P. 9 interlocutory appeal of the decision not to dismiss the Pickards' petition for a declaratory judgment. The trial court entered an order on July 5, 2011, declining to permit the Board to pursue an interlocutory appeal because the court found that "it is unlikely the appellate court . . . will rule that Tennessee Code Annotated section 69-3-105(i) extinguishes all right under Tennessee Code Annotated sections 4-5-223 and 225."

In its response to the Pickards' motion for summary judgment, TDEC conceded that a segment of Horse Creek was "moderately impaired." However, TDEC differed with the Pickards' legal interpretations of the Antidegradation Rule. In its separate response, the Board, emphasizing the fact that the Pickards' April 2009 permit appeal was still pending, asserted that the Pickards lacked standing and had failed to present a justiciable controversy. The Board argued that the Pickards' January 2009 request for a declaratory order was premature because TDEC had not yet issued a final permit to Tennessee Materials and because the Board was not legally permitted to entertain a petition for a declaratory order until a final permit had been issued. The Board also argued that following the issuance of a final permit, the only method to seek administrative review of the permitting decision was an appeal to the Board in accordance with Tenn. Code Ann. § 69-3-105(i).

Following arguments on September 9, 2011, the trial court filed its third Memorandum and Order on October 17, 2011. The court found that Tenn. Code Ann. § 69-3-105(i) did not preclude the Pickards from filing a petition for declaratory judgment under Tenn. Code Ann. § 4-5-225 and, therefore, that the Pickards had standing and that their petition presented justiciable issues. It also found that the material facts were not in dispute and that the dispositive issues in the case involved questions of law. Concurring with the Pickards' interpretation of the Antidegradation Rule, the trial court concluded that "the unavailable conditions category, found at Tenn. Comp. R. & Regs. 1200-4-3-.06(2), must be applied to Tennessee Materials' permit application."

Both TDEC and the Board perfected an appeal to the Court of Appeals. In an opinion filed on September 4, 2012, the Court of Appeals affirmed the trial court's decisions with regard to (1) the Pickards' standing, (2) ripeness, (3) exhaustion of administrative remedies, and (4) Tenn. Code Ann. § 69-3-105(i)'s preclusive effect on other avenues for administrative and judicial review of TDEC's permitting decisions. *Pickard v. Tennessee Dep't of Env't & Conservation*, No. M2011-02600-COA-R3-CV, 2012 WL 3834777, at *1 (Tenn. Ct. App. Sept. 4, 2012). The court concluded that the Pickards had properly filed a petition in the trial court for a declaratory judgment under Tenn. Code Ann. § 4-5-225 "[a]fter the denial of both the pre-permit and post-permit declaratory order petitions." *Pickard v. Tennessee Dep't of Env't & Conservation*, 2012 WL 3834777, at *17.

Turning to the merits of the issues relating to the Antidegradation Rule, the Court of Appeals disagreed with the trial court's conclusion that the language of the Antidegradation Rule is unambiguous. *Pickard v. Tennessee Dep't of Env't & Conservation*, 2012 WL 3834777, at *24. After deciding that the trial court had given no deference to TDEC's interpretation of the Antidegradation Rule, the court reversed the summary judgment and remanded the case to the trial court with directions to "conduct a trial on the merits to

determine the proper interpretation of the Antidegradation rule." *Pickard v. Tennessee Dep't of Env't & Conservation*, 2012 WL 3834777, at *25.

We granted TDEC's and the Board's joint Tenn. R. App. P. 11 application for permission to appeal. We have determined that the Pickards are not entitled to seek judicial review of TDEC's final decision to issue a discharge permit under Tenn. Code Ann. § 4-5-225. In disputes of this sort, the permit appeal procedure in Tenn. Code Ann. § 69-3-105(i) is the "the exclusive means for obtaining administrative review of the commissioner's issuance or denial of a permit." Accordingly, the only means to obtain judicial review of an administrative grant or denial of a discharge permit is a Tenn. Code Ann. § 4-5-322 (Supp. 2013) petition for judicial review of the Board's disposition of the permit appeal under Tenn. Code Ann. § 69-3-105(i).

**II.**

Our review of this record and the parties' briefs convinces us that the dispositive issue in this case is whether Tenn. Code Ann. § 69-3-105(i) provides the exclusive procedure to seek administrative, and therefore judicial, review of TDEC's decisions regarding the issuance of a discharge permit. Addressing this issue requires us to interpret Tenn. Code Ann. § 69-3-105(i). Interpretations of statutes involve questions of law which the appellate courts review de novo without a presumption of correctness. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012); *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 531 (Tenn. 2011).

When called upon to construe a statute, our role is to ascertain and to give effect to the General Assembly's purpose without unduly restricting or expanding the statute beyond its intended scope. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). To ascertain a statute's purpose, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of the context in which they are used. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013).

When a statute's language is clear and unambiguous, we will construe and apply its plain meaning. *Shelby Cnty. Health Care Corp. v. Nationwide Mut. Ins. Co.*, 325 S.W.3d 88, 92 (Tenn. 2010). However, when the statutory language is unclear, we may consider, among other things, the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527-28 (Tenn. 2010); *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851-52 (Tenn. 2010).

**III.**

In 1971, the Tennessee General Assembly – recognizing that clean, fresh water is one of Tennessee's most valuable natural resources – enacted the Water Quality Control Act of 1971.[10]  Six years later, the General Assembly replaced this Act with the Water Quality Control Act of 1977[11] in order to qualify for full participation in the federal National Pollutant Discharge Elimination System.[12]  In both Acts, the General Assembly stated that one of the purposes of the Water Quality Control Act is:

> to abate existing pollution of the waters of Tennessee, to reclaim polluted waters, to prevent the future pollution of the waters, and to plan for the future use of the waters so that the water resources of Tennessee might be used and enjoyed to the fullest extent consistent with the maintenance of unpolluted waters.

Tenn. Code Ann. § 69-3-102(b).

The Act empowered the Commissioner of Environment and Conservation ("Commissioner") to issue NPDES permits.[13]  In addition, the Act created the Tennessee Water Quality Control Board[14] and provided that the Commissioner would serve as its chair.[15]  The Board has several enumerated duties which include establishing water quality standards, classifying Tennessee's waters, adopting rules and regulations to protect Tennessee's waters, formulating and adopting a state water quality plan, and hearing appeals from the Commissioner's decisions to grant or deny permits.[16]

---

[10]Act of May 4, 1971, ch. 164, 1971 Tenn. Pub. Acts 409.

[11]Act of May 19, 1977, ch. 366, 1977 Tenn. Pub. Acts 904 (codified as amended at Tenn. Code Ann. § 69-3-102 to -148 (2012 & Supp. 2013)).

[12]Tenn. Code Ann. § 69-3-102(c).

[13]Tenn. Code Ann. §§ 69-3-107(14), -108.

[14]This Board has been renamed as the Tennessee Board of Water Quality, Oil and Gas.  Tenn. Code Ann. § 69-3-104(a)(1).

[15]Tenn. Code Ann. § 69-3-103(a)(1)(A).

[16]Tenn. Code Ann. § 69-3-105.

In 1974, the Board promulgated its first "Antidegradation Statement" as a rule. In its 2007 version of the Antidegradation Rule which is applicable to this case,[17] the Board stated that Tennessee's water quality standards exist to "fully protect existing uses of all surface waters."[18] The Antidegradation Rule provided that "the Tennessee Water Quality Standards shall not be construed as permitting the degradation . . . of high quality surface waters."[19] The rule also specified that bodies of water, such as Horse Creek, that do not qualify as "Exceptional Tennessee Waters" or "Outstanding National Resource Waters" will be evaluated in terms of "available conditions" and "unavailable conditions."[20]

Prior to 2005, the only persons who could appeal from the Commissioner's decision to grant or deny a discharge permit were the permit applicants themselves. The Water Quality Control Act did not allow other interested persons and entities, such as neighbors and environmental groups, to challenge the Commissioner's decision administratively or in the courts. In the absence of a statutory remedy, third parties affected by the Commissioner's decision to issue a permit sought relief either by requesting a declaratory order from the Board in accordance with Tenn. Code Ann. § 4-5-223 or by filing a pollution complaint under Tenn. Code Ann. § 69-3-118 (2012).

These remedies proved to be cumbersome and inefficient. Accordingly, in 2005, the General Assembly amended Tenn. Code Ann. § 69-3-105 to provide environmental groups and other interested parties with the ability to seek administrative and judicial review of the Commissioner's decisions regarding discharge permits.[21] Thus, at the time of this proceeding, Tenn. Code Ann. § 69-3-105(i) directed the Board to "hold a contested case hearing"[22] whenever the Commissioner's issuance or denial of a permit is challenged

---

[17]The Board rewrote Tenn. Comp. R. & Regs. 1200-04-03 ("General Water Quality Criteria") in 2013 and replaced it with a revised and expanded set of standards that became effective on July 2, 2013. The language of the current version of the Antidegradation Rule differs significantly from the version of the rule being challenged by the Pickards. In this opinion, we will cite and quote the relevant regulations as they stood in 2009.

[18]*See* Tenn. Comp. R. & Regs. 1200-04-03-.06(1) (2008).

[19]Tenn. Comp. R. & Regs. 1200-04-03-.06(1) (2008).

[20]Tenn. Comp. R. & Regs. 1200-04-03-.06(1)-(3) (2008).

[21]Act of May 19, 2005, ch. 355, 2005 Tenn. Pub. Acts 800 (codified as amended at Tenn. Code Ann. § 69-3-105(i) (2012)).

[22]The definition of a "contested case" is found in Tenn. Code Ann. § 4-5-102(3) (2011).

by the permit applicant or by any aggrieved person who participated in the public comment period or gave testimony at a formal public hearing whose appeal is based upon any of the issues that were provided to the commissioner in writing during the public comment period or in testimony at a formal public hearing on the permit application.

While the 2005 amendment opened the door to direct permit appeals by third parties, it closed other doors. The last sentence of Tenn. Code Ann. § 69-3-105(i) states:

Notwithstanding § 4-5-223 or § 69-3-118(a), or any other law to the contrary, this subsection (i) and the established procedures of Tennessee's antidegradation statement, found in the rules promulgated by the department, shall be the exclusive means for obtaining administrative review of the commissioner's issuance or denial of a permit.[23]

In light of this language, the issue we must address is whether Tenn. Code Ann. § 69-3-105(i) prevents third parties such as the Pickards from obtaining administrative and judicial review of the Commissioner's application of the Antidegradation Rule in a particular

---

[23]In 2013, the General Assembly enacted a new version of Tenn. Code Ann. § 69-3-105(i). The subsection in its entirety now says:

A petition for permit appeal may be filed by the permit applicant or by any aggrieved person who participated in the public comment period or gave testimony at a formal public hearing whose appeal is based upon any of the issues that were provided to the commissioner in writing during the public comment period or in testimony at a formal public hearing on the permit application. Additionally, for those permits for which the department gives public notice of a draft permit, any permit applicant or aggrieved person may base a permit appeal on any material change to conditions in the final permit from those in the draft, unless the material change has been subject to additional opportunity for public comment. Any petition for permit appeal under this subsection (i) shall be filed with the board within thirty (30) days after public notice of the commissioner's decision to issue or deny the permit. Notwithstanding the provisions of § 4-5-223 or § 69-3-118(a), or any other provision of law to the contrary, this subsection (i) and the established procedures of Tennessee's antidegradation statement, found in the rules promulgated by the department, shall be the exclusive means for obtaining administrative review of the commissioner's issuance or denial of a permit. When such a petition is timely filed, the procedure for conducting the contested case shall be in accordance with § 69-3-110(a).

Act of April 3, 2013, ch. 181 § 14, 2013 Tenn. Pub. Acts __, __. While these minor changes would not alter the outcome of this case, we will quote the Act as it existed in 2009.

permitting decision using either a petition for declaratory order under Tenn. Code Ann. § 4-5-223 or a petition for declaratory judgment under Tenn. Code Ann. § 4-5-225.

**IV.**

Provisions of both the Water Quality Control Act of 1977 and the Uniform Administrative Procedures Act govern the administrative and subsequent judicial review of a decision by the Commissioner to grant or deny a discharge permit. Because they share a common purpose, we must construe each of these statutes in light of the other related statutes. *In re Estate of Trigg*, 368 S.W.3d 483, 496 (Tenn. 2012). When the interpretation of any of the statutes is doubtful, we may be aided by considering the words and legislative purpose of the related statutes. *See Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010). We must endeavor to avoid a construction that places one statute at cross purposes with another, *City of Harriman v. Roane Cnty. Election Comm'n*, 354 S.W.3d 685, 689 (Tenn. 2011), and we must construe related statutes in a way that provides the harmonious operation of all the statutes. *Graham v. Caples*, 325 S.W.3d at 582.

Tenn. Code Ann. § 4-5-223, the statute authorizing requests for administrative agencies to issue declaratory orders, does not require an agency to issue a declaratory order whenever one is requested. An agency may refuse to issue a declaratory order. *See* Tenn. Code Ann. § 4-5-223(c). Thus, in circumstances where either the Commissioner or the Board or both decline to issue a declaratory order and the Commissioner grants a discharge permit, the avenues for seeking judicial review of the refusal to issue a declaratory order are limited. As the Court of Appeals has already noted, parties cannot seek direct judicial review of the Commissioner's or the Board's decision not to issue a declaratory order. *Pickard v. Tennessee Dep't of Env't & Conservation*, 2012 WL 3329618, at *10. The only statutory avenue available to parties whose petition for declaratory order is denied is to file a petition for declaratory judgment in the chancery court in accordance with Tenn. Code Ann. § 4-5-225.

However, based on the language of Tenn. Code Ann. § 4-5-225 itself, filing a petition for declaratory judgment in the Chancery Court for Davidson County is not appropriate when another type of appellate review is "otherwise specifically provided by statute." Prior to 2005, no other provision in the Uniform Administrative Procedures Act or the Water Quality Control Act of 1977 "otherwise specifically provided" a procedure for reviewing the denial of a request for declaratory order in the context of a permitting decision. Those circumstances changed in 2005 when the General Assembly enacted Tenn. Code Ann. § 69-3-105(i).

-11-

The permit appeal to the Board authorized by Tenn. Code Ann. § 69-3-105(i) is the "exclusive means for obtaining administrative review of the commissioner's issuance or denial of a permit." While the meaning of "exclusive" is plain enough, the General Assembly amplified its intent by also stating that a permit appeal was the exclusive avenue for seeking administrative review of the Commissioner's permitting decision "[n]otwithstanding § 4-5-223 or § 69-3-118(a), or any other law to the contrary." Thus, in light of the plain language of Tenn. Code Ann. § 69-3-105(i), it is indubitable that the permit appeals authorized by Tenn. Code Ann. § 69-3-105(i) have displaced the petitions for declaratory orders under Tenn. Code Ann. § 4-5-223 and the Water Quality Control Act's other remedies in Tenn. Code Ann. § 69-3-118(a) as the procedure for seeking administrative and judicial review of the Commissioner's permitting decisions.

Our interpretation of the effect of Tenn. Code Ann. § 69-3-105(i) is entirely consistent with the provision's legislative history. The Bill Summary prepared by the General Assembly's Office of Legal Services explained that "[t]his bill would be the exclusive means for obtaining administrative review of the commissioner's decision on permit applications."[24] When Senator Doug Jackson presented the bill to the Senate Environment, Conservation, and Tourism Committee on May 11, 2005, he explained that "The bill would provide that the only mechanism to have their complaint addressed would be through this appeal."[25]

When the full Senate considered and passed the bill on May 16, 2005, Senator Jackson stated that it was "very positive, but it does strike a compromise."[26] The compromise, according to Senator Jackson, was that in return for permitting "any aggrieved citizen" to appeal the Commissioner's permitting decision to the Board, "other appeals under the Uniform Administrative Procedures Act and other citizen complaints that have been allowed under the previous law will no longer exist."

---

[24]Tennessee General Assembly, Bill Summary: SB 2258, *available at* http://wapp.capitol.tn.gov/apps/billinfo/BillSummaryArchive.aspx?BillNumber=SB2258&ga=104.

[25]Hearing on S.B. 2258 before the Senate Env't, Conservation, and Tourism Comm., 104th Gen. Assemb., (Tenn. May 11, 2005) (statement of Sen. Doug Jackson), *available at* http://moe.legislature.state.tn.us/SenateAR/104Committ-05/EC&T/051105.wma. (Senator Jackson's statement is found during the twenty-third minute of the recoding.)

[26]Hearing on S.B. 2258 on the Senate Floor, 104th Gen. Assembl., (Tenn. May 16, 2005) (statement of Sen. Doug Jackson), *available at* http://moe.legislature.state.tn.us/SenateAR/104Chamber-05/051605.wma. (Senator Jackson's statements are found approximately one hour and forty-two minutes from the beginning of the recording.)

One of the factors that influenced the "compromise" reflected in Tenn. Code Ann. § 69-3-105(i) was the desire to simplify the administrative and judicial review of the Commissioner's permitting decisions. The tortuous and labyrinthine proceedings of this very case demonstrate the wisdom of the General Assembly's decision to establish a single, straightforward process by which any aggrieved person or entity would be able to obtain both administrative and, if necessary, judicial review of a decision by the Commission regarding a discharge permit. The administrative review consists of an appeal to the Board pursuant to Tenn. Code Ann. § 69-3-105(i). Parties dissatisfied with the Board's disposition of an appeal may seek judicial review of the Board's decision by filing a petition for judicial review in accordance with Tenn. Code Ann. § 4-5-322.

## V.

This record reflects that the Pickards filed a timely and appropriate Tenn. Code Ann. § 69-3-105(i) petition on April 6, 2009[27] and that this petition has remained pending unresolved before the Board during these lengthy judicial proceedings. Cognizant of the time and effort that the parties and the trial court have devoted to this dispute, we must finally address whether it was appropriate for the trial court to adjudicate the disputes between the parties before the Board has had an opportunity to consider the substantive issues raised in the Pickards' permit appeal. We have determined that the trial court erred by addressing the merits of the Pickards' Antidegradation Rule claims.

Courts traditionally demonstrate their respect for administrative agencies in two ways. First, they generally give great deference to an agency's interpretation of its own rules because the agency possesses special knowledge, expertise, and experience with regard to the subject matter of the rule. *See Jackson Exp., Inc. v. Tennessee Pub. Serv. Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984). Thus, an agency's interpretation of its own rules has "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *BellSouth Adver. & Publ'g Corp. v. Tennessee Regulatory Auth*., 79 S.W.3d 506, 514 (Tenn. 2002) (quoting *Jackson Exp., Inc. v. Tennessee Pub. Serv. Comm'n*, 679 S.W.2d at 945).

Notwithstanding the courts' respect for administrative expertise, an agency's interpretation of its controlling statutes remains a question of law subject to *de novo* review. While an agency's interpretation of its controlling statutes is "entitled to consideration and respect and should be awarded appropriate weight," particularly in regard to "doubtful or ambiguous statutes," an agency's statutory interpretation is not binding on the courts. *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976); *see also H & R*

---

[27]The Tenn. Code Ann. § 69-3-105(i) petition the Pickards filed on January 16, 2009 following the issuance of the draft permit was premature.

*Block E. Tax Servs., Inc. v. State, Dep't of Commerce & Ins., Div. of Ins.*, 267 S.W.3d 848, 854-55 (Tenn. Ct. App. 2008) (discussing why courts afford less deference to an agency's statutory interpretations than to an agency's interpretation of its own regulations).

Second, the courts demonstrate their respect for administrative agencies through the common-law "exhaustion of administrative remedies" doctrine. In its traditional form, the doctrine prompts the courts "to stay their hand" until an administrative proceeding has run its course. *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 847-48 (Tenn. 2010); *see also Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 235 (Tenn. 2010). By doing so, the courts (1) demonstrate their respect for the administrative agency's expertise, (2) promote efficient decision-making, (3) allow agencies to correct their own mistakes, and (4) ensure the creation of a complete administrative record should later judicial review be requested. *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d at 236; *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838-39 (Tenn. 2008). The mere fact that an agency is unlikely to grant relief does not excuse plaintiffs from exhausting their administrative remedies. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d at 839.

While the exhaustion doctrine is traditionally prudential and discretionary, many current exhaustion requirements are mandated by statute. When exhaustion is a clear statutory requirement, "exhaustion is an absolute prerequisite for relief," and failure to exhaust administrative remedies will defeat a reviewing court's subject matter jurisdiction. *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d at 236.

Neither the Water Quality Control Act nor the Uniform Administrative Procedures Act explicitly require the exhaustion of administrative remedies prior to filing a petition for review of the Board's decision in a Tenn. Code Ann. § 69-3-105(i) appeal. Accordingly, we must determine whether, in this particular case, the courts, in the exercise of their discretion, should decline to address the Pickards' claims until the Board has had an opportunity to address them.

We have recognized exceptions to the prudential application of the exhaustion of remedies requirement in circumstances where exhaustion is not statutorily required. These exceptions include: (1) when the administrative remedy would cause undue prejudice to the subsequent assertion of a claim in court; (2) when the administrative remedy would be inadequate because the agency does not appear empowered to grant effective relief; and (3) when the agency has been shown to be biased or has predetermined the issue. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d at 845 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (1992)).

The Pickards argue that exhaustion is not required for two reasons. First, they insist that requiring them to exhaust their administrative remedies would be a poor policy choice. Second, they insist that exhaustion should not be required because the scope of a Tenn. Code Ann. § 69-3-105(i) proceeding is so narrow that it will not permit them to raise the issues they are seeking to raise.

We turn first to the Pickards' policy argument. They insist that requiring them to pursue their statutory remedies before the Board is a bad idea because the Board lacks the power to stay the permit once it is granted. They point out that bulldozers and backhoes can start digging as soon as the permit is issued and that no one can stop the potential environmental damage while the permit appeal is pending.

We agree that the Water Quality Control Act does not empower the Board to stay the effectiveness of a permit once the Commissioner has issued it. But this argument, however meritorious, must be directed to the General Assembly, not the courts. Our duty is "to enforce the law impartially as written." *Somerville v. McCormick*, 182 Tenn. 489, 497, 187 S.W.2d 785, 788 (1945). The Constitution of Tennessee does not permit this Court "to question the wisdom of a statutory scheme." *Green v. Johnson*, 249 S.W.3d 313, 318 (Tenn. 2008); *see also* Tenn. Const. art. II, § 2; *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d at 843 & n.8. Instead,

> [t]he primary function of this Court is to interpret and apply the
> law to given situations. To legislate is wholly foreign to our
> duty.
>
> \*　　　\*　　　\*
>
> Such matters are committed to the intelligence and discretion of
> the [General Assembly] and the courts will not run a race of
> opinions with these representatives of the people upon the
> question of the wisdom and propriety of such legislation.

*Rush v. Great Am. Ins. Co.*, 213 Tenn. 506, 516, 518-19, 376 S.W.2d 454, 458-59 (1964); *see also TriHealth, Inc. v. Board of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005) ("The Constitution presumes that . . . even improvident [legislative] decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).

The General Assembly has seen fit not to give the Board authority to stay the effectiveness of a permit while it is being reviewed under Tenn. Code Ann. § 69-3-105(i). While providing the Board with this authority would be entirely appropriate, we cannot imbue the Board with authority not granted by the General Assembly.

The Pickards also insist that Tenn. Code Ann. § 69-3-105(i) will not permit the Board to reach the question of the proper interpretation and application of the Antidegradation Rule. They point to Tenn. Comp. R. & Regs. 1200-04-05-.12, which describes permit appeals as challenges to "the denial, terms, or conditions of a permit" and states that appellants "must specify what terms or conditions they are appealing in their petition" and that "[o]nly those terms or conditions specified in the petition will be considered subject to appeal." Tenn. Comp. R. & Regs. 1200-04-05-.12(1)-(2) (2011). The Pickards suggest that TDEC's interpretation of the Antidegradation Rule is not one of the "terms or conditions" of the permit and thus the question would evade the Board's scrutiny.

We do not read the permit appeal regulations so narrowly. First, in order to evaluate the "terms and conditions" of the Commissioner's final permit to Tennessee Materials, the Board would have to apply (and thus interpret) the Antidegradation Rule. Second, the permit appeal regulations specify that an aggrieved third-party appellant may raise issues that "were provided to the commissioner in writing during the public comment period" or that were "provided in testimony at a formal public hearing on the permit." Tenn. Comp. R. & Regs. 1200-04-05-.12(4). The Pickards raised the issue of the interpretation of the Antidegradation Rule using both of these methods. By submitting this issue in writing and orally at the public hearing, the Pickards ensured that the issues relating to the interpretation and application of the Antidegradation Rule to Tennessee Materials' application for a permit would be before the Board during the direct appeal.

The Water Quality Control Act itself reflects that permit appeals are not as narrow in scope as the Pickards suggest. Tenn. Code Ann. § 69-3-105(i) authorizes the Board to reverse or modify the Commissioner's permit decisions when those decisions fail to comply with the Act. The Act, in turn, specifies that the Commissioner's permitting decisions must comply with the regulations promulgated by the Board. Tenn. Code Ann. § 69-3-108(g). In no way do the Act or its accompanying regulations shield TDEC's and the Commissioner's interpretation of the Antidegradation Rule from Board review under a direct permit appeal. This is illustrated, for example, by *Big Fork Mining Co. v. Tennessee Water Quality Control Bd.*, 620 S.W.2d 515 (Tenn. Ct. App. 1981), in which a permit applicant challenged TDEC's application of the Antidegradation Rule, as well as the constitutionality of the rule, as part of a direct permit appeal.

Based on our consideration of this record, we have determined that the trial court erred in this case by addressing the Pickards' arguments concerning the construction and application of the Antidegradation Rule to Tennessee Materials' permit without first requiring the Pickards to pursue their Tenn. Code Ann. § 69-3-105(i) appeal to the Board to its conclusion. The factual, legal, and policy issues involved in this dispute are undoubtedly within the particular expertise and competence of the Board. In addition, following the Board's consideration and disposition of the appeal, the courts will have the benefit of a full record and an authoritative explanation of the Board's decision should either of the parties seek judicial review of the Board's decision.

## VI.

We need not address the issues regarding the interpretation and application of the Antidegradation Rule in light of our conclusions that Tenn. Code Ann. § 69-3-105(i) provides the exclusive procedure for seeking administrative review of the Commissioner's permitting decision and that the trial court and the Court of Appeals erred by failing to require the Pickards to exhaust their administrative remedies before the Board before seeking judicial review of the Commissioner's permitting decision. The Board should be provided with the opportunity to address the Pickards' arguments regarding the interpretation and application of the Antidegradation Rule at the contested case hearing that is still pending before the Board. If necessary, the outcome of that hearing will be subject to judicial review in accordance with Tenn. Code Ann. § 4-5-322.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to the trial court with directions to dismiss the petition because the Pickards failed to exhaust their administrative remedies before the Board. The costs of this appeal are taxed to E. Ron Pickard and Linda Pickard as trustees of the Sharon Charitable Trust and as individuals, from all of which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

-17-