IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2019 Session

## ANDRES PEREZ v. TENNESSEE BOARD OF MEDICAL EXAMINERS

**Appeal from the Chancery Court for Davidson County**
No. 16-1218-III     Ellen H. Lyle, Chancellor
_____

### No. M2018-00960-COA-R3-CV
_____

This case arose out of the Petitioner/Appellant's attempts to become a licensed physician in Tennessee. Appellant sent an application to the Tennessee Board of Medical Examiners but was ultimately rejected. After a contested hearing, the Board again determined that Appellant's application should be rejected since Appellant had not engaged in direct patient care in many years. Thereafter, Appellant sought review of the Board's decision in the Chancery Court of Davidson County pursuant to the Tennessee Uniform Administrative Procedures Act. The chancery court concluded that Appellant was not entitled to relief, and Appellant appealed to this Court. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA D. MCGEE, JJ., joined.

David R. Grimmett, Nashville, Tennessee, for the appellant, Andres Perez.

Herbert H. Slatery, III, Attorney General and Reporter; Sara E. Sedgwick, Senior Assistant Attorney General; Nicholas R. Barry, Assistant Attorney General, for the appellee, Tennessee Board of Medical Examiners.

## OPINION

### BACKGROUND

This case involves the efforts of Dr. Andres Perez ("Appellant") to become a licensed Tennessee doctor certified to practice emergency and general medicine.[1]

_____

[1] As a threshold matter, we must point out that the Appellant in this case was represented by counsel throughout the proceedings before the Board as well as in the trial court; additionally, counsel for

Appellant graduated from medical school in 1981 and thereafter participated in various residency programs throughout the northeastern United States. It is undisputed that Appellant never fully completed a residency program, but did practice in the areas of general surgery as well as emergency medicine for several years. From 1988 through 1999, Appellant practiced emergency medicine and eventually became fully licensed in Michigan, Arizona, and New Hampshire. Starting in 1999, however, Appellant ceased working directly with patients and was employed at various private healthcare companies. Appellant became board certified in preventative medicine and from 1999 to September 2006, Appellant was employed with Blue Cross Blue Shield. Then, from September 2006 through April 2015, Appellant worked for Healthways, Inc.[2] in Franklin, Tennessee.

On May 22, 2015, Appellant filed an application with the Tennessee Board of Medical Examiners ("the Board") for medical licensure in the State of Tennessee, requesting to be certified in emergency medicine and general practice. Thereafter, Appellant received correspondence from the Board revealing the Board's concern that Appellant had not practiced emergency medicine since 1999 and requested that Appellant interview with the entire Board.[3] The interview took place on January 26, 2016, and the Board thereafter voted to deny Appellant's application for medical licensure. In a follow-up letter sent to Appellant, the Board indicated that Appellant's application was denied "in light of the fact that you have been out of clinical practice for the past sixteen years." This letter also provided that Appellant was entitled to challenge the Board's ruling in a contested hearing pursuant to Tennessee's Uniform Administrative Procedures Act ("the UAPA") should Appellant so choose.

Consequently, Appellant filed an appeal of the Board's decision and a contested case hearing was set for September 14, 2016. At the hearing, Appellant testified that although his preventative medicine practice with insurance companies did not involve any direct patient care, he was heavily involved in the reviewing of patients' charts and in working with healthcare providers to create and modify care plans for patients. In Appellant's own words, he described this position as

---

the Appellant filed the appellate brief. However, the Appellant chose to represent himself at oral argument and now proceeds pro se in the present case. Accordingly, we briefly note that "[p]arties who decide to represent themselves are entitled to fair and equal treatment by the courts[,]" and we keep in mind that "many pro se litigants have no legal training and little familiarity with the judicial system." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003).

[2] The Appellant described Healthways, Inc. as being a "disease management company" that has evolved into "a total population health provider." Appellant's official position at Healthways, Inc. was vice president of medical integrity.

[3] Specifically, Appellant received a letter from the Board on September 3, 2015, stating that "[i]t is the practice of the medical director to defer files when the information received appears that a licensee has not practiced medicine clinically in more than 2 years."

[t]he utilization review and utilization management . . . both at the hospital level and also at the individual's private practice level. In both instances I would review the charts of the patients for the assessment and the working diagnosis, and identify - - I would be looking for appropriate flow of the evaluation process, the use of corroborative testing or the lack of, and would be providing some information to the providers and to the facilities in terms of the performance of care, the administration of care on these patients.

Overall, Appellant's testimony reflected that his duties were largely administrative, although they did involve some level of diagnosing patients and collaborating with providers to create treatment plans. Further, Appellant discussed how since learning of the Board's concern regarding Appellant's long absence from clinical practice, Appellant had begun to seek out opportunities to reintegrate himself into the practice of emergency medicine. Specifically, Appellant participated in a one-month emergency medicine rotation at St. Mary Mercy Hospital in Michigan in March-April of 2016 and in July of 2016 Appellant began working in the Ireland Army Community Hospital in Fort Knox, Kentucky as an emergency medicine staff physician. Appellant entered into evidence letters of recommendation from both of the doctors that had supervised Appellant in these recent positions; the letters were complimentary of Appellant and suggested that he would be a strong addition to the medical community in Tennessee. Appellant also testified, however, that the last time he was solely and independently responsible for a patient's care, including diagnosis, treatment, and/or writing prescriptions was in 1999.

At the end of the contested hearing, the Board determined that Appellant should not be granted medical licensure in Tennessee due to his long absence from emergency medicine. The Board's final order, in pertinent part, stated as follows:

3. [Appellant] holds active, unencumbered medical licenses in Michigan and Arizona and an inactive license in New Hampshire.

4. [Appellant] practiced emergency medicine from 1988 until 1999 and has not engaged in direct patient care since that time. From 1999 until approximately September 2006, [Appellant] practiced administrative medicine with Blue Cross Blue Shield. Since approximately September 2006 until at least April 2015, [Appellant] was employed by Healthways, Inc. in Franklin, Tennessee without benefit of a medical license.

5. Based on the foregoing, [Appellant] was asked to appear for interview before the Board and did so appear on January 26, 2016. During this interview, [Appellant] acknowledged that he had not seen a patient or practiced clinical medicine since 1999. Prior to denial, [Appellant] was given ample opportunity to withdraw his application. Based on the

application and the interview, the Board voted to deny [Appellant's] application.

\* \* \*

7. The facts alleged in paragraphs 1 through 6, supra, would constitute grounds for denial pursuant to TENN. CODE ANN. § 63-6-10l(a)(3) which provides that it is "the board's duty to examine the qualifications of all applicants for certification of fitness to practice medicine or surgery in this state . . ."

8. The facts alleged in paragraphs 1 through 6, supra, would constitute grounds for denial pursuant to TENN. CODE ANN. § 63-6-214(a) which gives the board the power to deny an application for a license to any applicant who applies for the same through reciprocity or otherwise.

Thus, although the Board strongly commended Appellant for taking steps towards reintegration into emergency medicine, the Board ultimately took the position that four months of working in the emergency room under the supervision of other doctors could not remedy the extended lapse in Appellant's emergency medicine practice. Nonetheless, the Board also stated that should Appellant complete a formal assessment that reflected that he is "fit and safe to practice without further remediation" within one year, Appellant could be granted a Tennessee license.

Pursuant to the UAPA, Appellant thereafter sought judicial review in the Chancery Court of Davidson County, Tennessee ("trial court") by filing a timely petition for review of the Board's action. In Appellant's brief to the trial court, he outlined four arguments: (1) that the Board's findings of fact and conclusions of law were insufficient for meaningful appellate review; (2) that the Board used an improper procedure in the contested case hearing in that it applied a presumption of "clinical incompetence" due to Appellant's extended absence from emergency medicine, and that this presumption was an unconstitutional procedure; (3) that the Board's decision to deny Appellant medical licensure violated the public policy of Tennessee; and (4) that the Board's decision was unsupported by the evidence in light of the fact that Appellant is licensed in three other states. In response, the Board asserted that the burden of proving competency such that licensure was appropriate lay with Appellant, and that Appellant could not establish that the Board's decision was arbitrary and capricious or unsupported by the evidence at the hearing. The trial court held a hearing on April 5, 2018, after which it determined that Appellant's petition should be denied.

A written order was entered by the trial court on April 23, 2018. Therein, the trial court made detailed findings as to each of Appellant's four arguments. First, the trial court ruled that the Board's findings of fact and conclusions of law were sufficient to

facilitate appellate review because the conclusions refer back to the findings upon which the conclusions are based. Stated differently, the trial court found that the Board exercised its discretion to deny Appellant licensure in light of Appellant's extended absence from any employment involving direct patient care. In the trial court's view, this was clearly reflected in the Board's final order, specifically paragraphs four and five. As such, the trial court soundly rejected Appellant's assertion that review of the instant case was not possible based on the format of the Board's order. Next, the trial court also rejected the contention that the Board engaged in any improper procedures during Appellant's contested case hearing. In addressing Appellant's third and fourth arguments, the trial court concluded that the Board did not violate public policy in denying Appellant's petition, and that substantial and material evidence underpinned the Board's decision.

Appellant filed a timely notice of appeal to this Court on May 23, 2018.

### ISSUES PRESENTED

Appellant raises three issues for this Court's review, which are taken from his brief:

1. Whether the trial court erred in finding that the Board provided sufficient findings of fact and conclusions of law.
2. Whether the trial court erred in finding that the Board's final decision was not arbitrary and capricious.
3. Whether the trial court erred in finding that the Board's decision was supported by substantial and material evidence.

### STANDARD OF REVIEW

The present case was appealed to the trial court pursuant to the UAPA. Accordingly, this Court's standard of review is found at Tennessee Code Annotated section 4-5-322(h):

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

- 5 -

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Additionally, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i). The same standard of review that is utilized by the trial court is applicable here. *See Estate of St. v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990) ("The scope of review in this Court is the same as in the trial court, to review findings of facts of the administrative agency upon a standard of substantial and material evidence."). Indeed, the trial court "may not substitute its judgment concerning the weight of the evidence for that of the Board[,]" and "the same limitations apply to that of the appellate court." *Roy v. Tennessee Bd. of Med. Examiners*, 310 S.W.3d 360, 364 (Tenn. Ct. App. 2009) (citing *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977); *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002)). "Thus, when reviewing a trial court's review of an administrative agency's decision, this court is to determine 'whether or not the trial court properly applied the . . . standard of review' found at Tenn. Code Ann. § 4-5-322(h)." *Id.* (citing *Jones*, 94 S.W.3d at 501 (quoting *Papachristou v. Univ. of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)). The standard applicable in this case is therefore "more narrow than the broad standard employed in other civil appeals[,]" *Ruff v. Neeley*, No. W2006-01192-COA-R3-CV, 2006 WL 3734641, at *6 (Tenn. Ct. App. Dec. 20, 2006), and we "do not substitute [our] judgement for that of the agency as to the weight of the evidence." *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). Overall, "the narrower scope of review used to review an agency's factual determinations suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Id.* at 279.

## DISCUSSION

### I.

We address each of Appellant's three issues in turn, first considering whether the trial court correctly determined that the Board's findings of fact and conclusions of law

were sufficient for appellate review. In order to understand the argument raised by Appellant, there are two areas of the Tennessee Code Annotated that must be briefly discussed.

First, Appellant brought this case as an appeal for judicial review of an administrative board's final order in a contested case. *See* Tenn. Code Ann. § 4-5-322(a) ("A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review."); *see also* Tenn. Code Ann. § 4-5-322(b)(1)(A)(i) ("Proceedings for review are instituted by filing a petition for review in chancery court."). Consequently, there is no dispute here that the procedures within the UAPA are applicable. Tenn. Code Ann. § 4-5-322(f) ("The procedure followed in the reviewing court will be followed in the review of contested cases decided by the agency, except as otherwise provided in this chapter."). One of the relevant UAPA procedures is the requirement that the Board render a final order containing findings of fact and conclusions of law after a contested case hearing:

> A final order, initial order or decision under § 50-7-304 shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness. Findings of fact, if set forth in language that is no more than mere repetition or paraphrase of the relevant provision of law, shall be accompanied by a concise and explicit statement of the underlying facts of record to support the findings.

Tenn. Code Ann. § 4-5-314(c). The mandate to enter findings of fact and conclusions of law is "a statutory imperative; it 'is not a mere technicality but is an absolute necessity without which judicial review would be impossible.'" *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 541 (Tenn. 1980) (citing *Levy v. State Bd. of Examiners, Etc.*, 553 S.W.2d 909, 911 (Tenn. 1977)); *see also* *Hoover, Inc. v. Metro Bd. of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996) ("[A] reviewing court can not [sic] determine whether the decision of an administrative body is supported by material evidence unless the administrative body makes findings of facts setting forth the reasons for its decision."). On the other hand, however, "the sufficiency of an agency's findings of fact must be measured against the nature of the controversy and the intensity of the factual dispute." *CF Indus.*, 599 S.W.2d at 541. To that point, "where there is no disputed issue of fact and the sole question before the agency is the proper conclusion to be drawn from the undisputed facts and the application of the correct legal rules, the record need not be burdened with detailed findings of fact." *Id.* Indeed, "[i]n such a case the facts need only be recited." *Id.* Consequently, the particular nature of the findings and conclusions required "necessarily varies from case to case." *Id.* Nonetheless, there is no dispute in the present case that the Board was required to enter a final order containing some findings of fact and conclusions of law explaining its decision to deny Appellant medical licensure. Tenn. Code Ann. § 4-5-314(c).

- 7 -

Second, another portion of the Tennessee Code Annotated explains the Board's duties as to overseeing physicians in Tennessee, and explains the circumstances under which it is appropriate for the Board to grant or deny a medical license or sanction a practicing physician. Specifically, Tennessee Code Annotated section 63-6-101(a)(3) provides that

> it shall be the board's duty to examine the qualifications of all applicants for certification of fitness to practice medicine or surgery in this state, to conduct disciplinary hearings, and to make such rules and regulations as are necessary to carry out and make effective this chapter. Any rules and regulations promulgated by the board shall comply with all requirements of the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.

Further, section 63-6-214 explains that "[t]he board has the power to . . . deny an application for a license to any applicant who applies for the same through reciprocity or otherwise." Tenn. Code Ann. § 63-6-214(a)(1). This section goes on to provide several circumstances under which it is appropriate for the Board to deny licensure to an applicant. *See generally* Tenn. Code Ann. § 63-6-214(b)(1)–(22) (providing that some grounds for physician discipline or denial of a request for licensure include, *inter alia*, "[u]nprofessional, dishonorable or unethical conduct;" "gross health care liability or a pattern of continued or repeated health care liability;" "willfully betraying of a professional secret;" or "engaging in the practice of medicine when mentally or physically unable to safely do so;"). Importantly, however, section 63-6-214 clearly provides that the Board is not limited in its action to the specific circumstances provided in subsections (b)(1)–(22). Tenn. Code Ann. § 63-6-214(b) ("The grounds upon which the board shall exercise power include, **but are not limited to** . . .") (emphasis added).

Thus, when read in conjunction, the foregoing sections make clear that it is well within the Board's discretion to regulate the practice of medicine in Tennessee, including granting licensure, but that the Board must act within the confines of the UAPA in doing so. Tenn. Code Ann. § 63-6-101 ("Any rules and regulations promulgated by the board shall comply with all requirements of the Uniform Administrative Procedures Act[.]"). This includes entering findings of fact and conclusions of law after holding a contested case hearing; however, the necessary degree of detail depends on the particular case and whether the facts were sharply disputed. Tenn. Code Ann. § 4-5-314(c).

Turning to the present case, Appellant argues on appeal that the trial court erred in concluding that the Board's final order contains sufficient findings of fact and conclusions of law to allow for appellate review. Instead, Appellant urges that "neither this [C]ourt nor Appellant are in a position to know why Appellant was denied a license to practice medicine." Appellant further argues that "[a]t no time in [the Board's] final order did the Board make the finding that [Appellant] does not meet the qualifications to

be licensed in Tennessee. . . . Unfortunately, the Board never mentioned what specific ground it was relying on in denying [Appellant] a license.”

The trial court, however, determined that that the Board’s final order was sufficient for appellate review:

> Upon analyzing the content of the decision below and comparing it to the statutes the Court concludes the decision contains sufficient supporting reasoning. Each of the [ ] Conclusions of Law cites to and refers back to the Findings of Fact in paragraphs 1 through 6. These paragraphs provide that the reason for denial of the [Appellant’s] license was because the [Appellant] had not engaged in direct patient care or practiced clinical medicine since 1999. This reasoning is made clear in paragraphs 4 and 5 of the Final Order which the Conclusions of Law refer back to.

> *       *       *

> As to the [Appellant’s] second challenge that the Board failed to articulate one of the 22 grounds listed in Tennessee Code Annotated section 63-6-214(b), this also is not a basis for reversal. While it is undisputed that the [Appellant’s] conduct and/or application did not present any of the wrongs listed in subsection (b) (e.g., unprofessional, dishonorable or unethical conduct, fraud or deceit in the practice of medicine, gross health care liability, habitual intoxication, conviction of a felony relating to drugs or the practice of medicine, etc.), Tennessee Code Annotated section 63-6-214(b), by its own terms, is not an exhaustive list for which the Board may deny a medical license. Subsection (b) also provides that other grounds may justify action by the Board. The Section specifically states that the Board’s power is “not limited to” the twenty-two (22) listed grounds. TENN. CODE ANN. § 63-6-214(b) (West 2018) (version effective to April 26, 2016) (“(b) The grounds upon which the board shall exercise such power include, but are not limited to. . .”) (emphasis added).

> Added to the nonexhaustive list of grounds in section 63-6-214(b) is that the general, introductory statute of the scheme, Tennessee Code Annotated section 63-6-101(a)(3) sets the policy that it is the “[B]oard’s duty to examine the qualifications of all applicants for certification of fitness to practice medicine or surgery in this state . . . .” In entrusting the Board with this duty, the Legislature has granted the Board substantial discretion in determining the appropriate circumstances in which to grant or deny an application for a medical license. Based upon the nonexhaustive list of grounds of section 63-6-214(b) and the discretion of the Board provided in 63-6-101, the Court does not find the Board’s interpretation of

- 9 -

its controlling statute clearly erroneous. In denying the [Appellant's] application, the Board relied on the undisputed proof that the [Appellant] had not seen a patient or practiced clinical medicine with direct patient care since 1999. This is a rational basis for the Board's decision in paragraph 9 of the Final Order that "the Petitioner had failed to meet his burden of establishing by a preponderance of the evidence that he currently possesses the clinical skills, knowledge and competence such that he should be granted a full, unrestricted Tennessee medical license."

Having reviewed both the administrative record and the record on appeal, we agree with the trial court's determination that the Board's final order was sufficient. The Board clearly explained in paragraphs four and five that the "[Appellant] has not engaged in direct patient care" or "seen a patient or practiced clinical medicine since 1999." Then, in the conclusions of law section of its order, the Board expressly refers back to those paragraphs and states that "[t]he facts alleged in paragraphs 1 through 6, supra, would constitute grounds for denial pursuant to" Tennessee Code Annotated sections 63-6-101 and 63-6-214.

We are unpersuaded in several respects by Appellant's assertion that the Board's order is somehow inadequate. First, as discussed *supra*, Appellant is correct in asserting that findings of fact and conclusions of law are necessary under the UAPA; however, it is also true that "where there is no disputed issue of fact and the sole question before the agency is the proper conclusion to be drawn from the undisputed facts and the application of the correct legal rules, the record need not be burdened with detailed findings of fact." *CF Indus.*, 599 S.W.2d at 541. The contested case hearing at issue here was simply not the kind "wherein the issues of fact are sharply contested and the proof is conflicting." *Id.* Rather, here, the facts underlying Appellant's application for licensure were never in dispute, nor were the facts regarding the approximately fifteen-year gap in his emergency medicine practice. The only dispute was whether based upon those facts the Appellant was qualified, in the Board's discretion, for medical licensure in Tennessee. As such, Appellant's apparent assertion that the record requires voluminous findings of fact and conclusions of law is misplaced. The present matter is simply not the type of fact-intensive, "sharply contested" case in which extensive findings of fact are necessary. *Id.*

In any event, this Court has no difficulty discerning the basis of the Board's decision to deny Appellant medical licensure based upon the Board's final order. On the contrary, it is quite clear from the language of the order that the Board's decision was based upon Appellant's long absence from the practice of emergency medicine. As the trial court aptly noted, the Board's conclusions of law are sufficient in that they expressly relate back to the findings of fact that address the Board's concern with the gap in Appellant's emergency medicine practice.

Moreover, like the trial court, we cannot agree with Appellant's assertion that the Board's failure to list a specific ground from section 63-6-214(b) somehow renders the Board's decision indiscernible. The list of grounds in section 63-6-214(b) is, by its own terms, nonexhaustive and it is well-settled that the Board has broad discretion in evaluating candidates for licensure. *See Wayne Cnty.*, 756 S.W.2d at 279 ("Courts defer to the decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise."); Tenn. Code Ann. § 63-6-101(a)(3) ("It shall be the board's duty to examine the qualifications of all applicants for certification of fitness to practice medicine or surgery in this state"). Further, Appellant cites no law in his appellate brief that suggests that the Board's failure to specify a section 63-6-214(b) ground renders the final order inadequate as a whole, or that to deny an applicant licensure the Board must rely on a specific ground listed in section 63-6-214(b).

While Appellant asserts difficulty in understanding the basis of the Board's order, this Court does not. Rather, it is apparent to us that the ground upon which the Board denied Appellant's application was the undisputed fact that Appellant had not engaged in direct patient care in nearly sixteen years, and this conclusion is readily apparent in the Board's final order. Accordingly, we conclude that Appellant's first issue is without merit.

**II.**

Appellant next argues that the trial court erred in finding that the Board's decision to deny Appellant medical licensure was not arbitrary and capricious. "A decision of an administrative agency is arbitrary or capricious when there is no substantial and material evidence supporting the decision." *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669 (Tenn. 2016) (citing *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn. Ct. App. 2011)) (involving a different statute that also applies the substantial and material evidence standard). Stated differently, "a decision is arbitrary or capricious if it 'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *Smith v. White*, 538 S.W.3d 1, 11 (Tenn. Ct. App. 2017) (citing *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007)). Further, "a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support[,]" and "[i]n the broadest sense, the arbitrary and capricious standard requires the court to determine whether the administrative agency has made a clear error in judgment." *Id.*; *Wade v. Tennessee Dep't of Finance and Admin.*, 487 S.W.3d 123, 131 (Tenn. Ct. App. 2015) (citing *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993)).

Here, Appellant contends that the Board's decision was arbitrary and capricious because the Board failed to take into account that Appellant worked in the field of "preventative medicine" from 1999 to 2015, and that, as such, the Board should not have considered Appellant as being out of practice in the field of emergency medicine. In support, Appellant relies on Tennessee Rules and Regulations 0880-02-.08, which provide that when an applicant seeks medical licensure in Tennessee, "an oral examination may be required[.]" Such an examination may be mandated by the Board under certain circumstances, including, but not limited to, "applicants for licensure who have been disciplined in another state; applicants who would be subject to discipline in Tennessee based on their conduct or condition; or applicants who have not engaged in the clinical practice of medicine for more than two (2) years." Tenn. Comp. R. & Regs. 0880-02-.08(3).

In light of the Board's requirement that Appellant undergo a formal assessment before being granted licensure, Appellant asserts that the Board relied on the foregoing regulation, but that this reliance was arbitrary and capricious. Appellant points out that he has never been sanctioned or disciplined in another state in which he is licensed; more importantly, however, Appellant urges that he should not be considered as not having "engaged in the clinical practice of medicine for more than two (2) years" because Appellant practiced "preventative medicine" from 1999 to 2015 and then worked in two different emergency rooms in 2016. Indeed, Appellant contends that "he was practicing preventative medicine for the two years prior to his application, therefore, [Reg. 0880-02-.03] did not apply[,]" and it was thus inappropriate for the Board to require Appellant to undergo a formal assessment. Essentially, Appellant avers that because the term "clinical practice of medicine" is not defined by section 0880-02-.03 or by Tennessee law,[4] the Board should have considered Appellant's work in preventative medicine the "clinical practice of medicine." Not to do so, in Appellant's view, was arbitrary and capricious. Respectfully, we do not agree.

Appellant's argument is correct in the sense that section 0880-02-.03 does not expressly define "the clinical practice of medicine." Tenn. R. & Regs. 0880-02-.08. In the absence of an express definition for the term, however, this Court must give "great deference" to the agency's interpretation of the rule:

> Courts traditionally demonstrate their respect for administrative agencies in two ways. First, they generally give great deference to an agency's interpretation of its own rules because the agency possesses special knowledge, expertise, and experience with regard to the subject matter of the rule. Thus, an agency's interpretation of its own rules has 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'

---

[4] Our research reveals no caselaw construing this regulation or defining "the clinical practice of medicine."

- 12 -

*Pickard v. Tennessee Water Quality Control Bd.*, 424 S.W.3d 511, 522 (Tenn. 2013) (quoting *BellSouth Adver. & Publ'g Corp. v. Tennessee Regulatory Auth.*, 79 S.W.3d 506, 514 (Tenn. 2002)) (noting that the second method of respect is the exhaustion of remedies doctrine); *see also* *Gay v. City of Somerville*, 878 S.W.2d 124, 127 (Tenn. Ct. App. 1994) ("We agree that considerable deference will be granted to an administrative agency's interpretation of its own regulation unless the interpretation is inconsistent with the terms of the regulation."). Although deference is especially applicable with "regard to 'doubtful or ambiguous statutes,' an agency's statutory interpretation is not binding on the courts." *Pickard*, 424 S.W.3d at 522 (quoting *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976)).

Here, the Board found that Appellant "had not seen a patient or practiced clinical medicine since 1999[.]" The clear implication of this finding is that Appellant's work from 1999 to 2016 did not constitute the "clinical practice of medicine." Appellant has cited no law to undermine the Board's apparent conclusion that Appellant was required to engage in actual patient care to meet this definition. Moreover, nothing in Appellant's brief convinces us that the Board acted arbitrarily in finding this regulation applicable despite Appellant's belated efforts to engage in some, albeit supervised, direct patient care for a mere few months prior to the hearing. Here, the Board in interpreting its own rules found that Appellant had not engaged in clinical practice to a sufficient extent in the years prior to his application to warrant licensure without examination. Affording the Board the proper deference, we cannot conclude that it lacked substantial and material evidence to make this finding.

Even assuming, however, that the Board erred in finding that regulation 0880-02-.03 was applicable, our inquiry into the propriety of the Board's decision would not end. Instead, the subject regulation provides that "the circumstances under which the Board may require [an] examination include, but are not limited to" the specific circumstances provided in regulation 0880-02-.03. Accordingly, this regulation affords the Board some level of discretion in deciding when to require an applicant to undergo a formal assessment before being granted licensure. In our view, the Board did not err in the exercise of this discretion.

The undisputed evidence at the contested case hearing was that Appellant has not been solely responsible for the direct care of a patient in nearly sixteen years. Indeed, when questioned, Appellant admitted that "the last time [he] had the one-on-one full responsibility for the entire course of care" for a patient was in 1999. Appellant went on to testify that the last time he issued a prescription for a patient was also 1999. Rather, Appellant was engaged in what he deems "preventative care" and the Board characterizes as "administrative medicine": the practice of medicine that did not involve independent or direct patient interaction. Thus, regardless of whether Appellant was not "engaged in the clinical practice of medicine for more than two (2) years," the record is undisputed

- 13 -

that Appellant was not solely and directly responsible for any patient's care for more than one and one-half decades.

Based on these undisputed facts, the Board simply determined that Appellant needs further assessment and perhaps further training before he can be certified in emergency medicine in Tennessee. We are disinclined to disturb that decision. The arbitrary and capricious standard requires this Court to consider whether the Board engaged in a clear error of judgment in its decision, and the Appellant has presented us with nothing demonstrating that such an error occurred here. *Wade*, 487 S.W.3d at 131. Here, the Board simply made a determination that Appellant's long absence from direct patient care necessitates a formal assessment before he can engage in the practice of emergency medicine in Tennessee. Appellant cites no law that persuades us that this decision was outside the bounds of the Board's discretion or was not based on any sound course of reasoning or exercise of judgment, and we thus conclude that the Board's ruling was not arbitrary and capricious. As such, Appellant's second issue raised on appeal is also without merit.

## III.

Finally, Appellant argues that the Board's decision was unsupported by substantial and material evidence. "[S]ubstantial and material evidence consists of relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed." *Armstrong*, 725 S.W.2d at 955 n.2. "[I]t is less than a preponderance of the evidence, . . . and more than a 'scintilla or glimmer' of evidence[.]" *StarLink Logistics*, 494 S.W.3d at 669. (internal citation omitted) (quoting *Wayne Cnty.*, 756 S.W.2d at 280). Further, it is not this Court's role to resolve conflicting evidence, as this is the task of the relevant administrative agency. *Wade*, 487 S.W.3d at 134. We may not "substitute [our] judgment concerning the weight of the evidence for that of the agency as to questions of fact[,]" and reversal of an administrative decision is thus inappropriate "solely because the evidence could also support another result." *Id.* (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)). "Rather, we may reverse an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence." *Id.*

With regard to this issue, Appellant argues that the Board's decision is unsupported by substantial and material evidence because the Board "fail[ed] to specify the grounds upon which [it] denied [Appellant's] license[,]" and as such, "Appellant and this Honorable Court are left to wonder what the basis was for denying [Appellant's] license." According to Appellant, the substantial and material evidence standard cannot

be satisfied here because the basis of the Board's decision is entirely unclear. Essentially, Appellant reiterates the argument already rejected in section one of this opinion.[5]

Again, however, we are unpersuaded by Appellant's assertion that the Board's reasoning in rejecting Appellant's application is somehow unclear. As discussed at length *supra*, the Board rejected Appellant's application because Appellant has, undisputedly, not engaged in direct patient care in almost sixteen years. While Appellant asserts that he is "left to wonder what the basis was for denying" his application, this Court has not experienced similar difficulty. The Board made its conclusion very clear, and we cannot find that "a reasonable person would necessarily arrive at a different conclusion based on the evidence." *Wade*, 487 S.W.3d at 134. Simply put, Appellant has not convinced us that the Board's final order is unclear, much less that the evidence underpinning that order is unsupported by substantial and material evidence. Indeed, the relevant evidence in the present case was largely undisputed. Consequently, we conclude that the Board's decision was supported by substantial and material evidence.

In sum, Appellant has failed to persuade us that the Board's decision was unclear, arbitrary and capricious, or unsupported by substantial and material evidence. In the present case, we do "not substitute [our] judgment concerning the weight of the evidence for that of the Board['s]." *Roy*, 310 S.W.3d at 364*; see also* ***Wayne Cnty.***, 756 S.W.2d at 279 ("[T]he courts should be less confident that their judgment is preferable to that of the [administrative] agency."); ***CF Indus.***, 599 S.W.2d at 540 (explaining that judicial review of an administrative agency's action requires a more narrow standard of review than in other civil appeals). In light of the more stringent standard of review applicable in the present appeal, and Appellant's failure to cite any caselaw to convince us otherwise, we conclude that the trial court did not err in affirming the decision of the Board.

## CONCLUSION

---

[5] Appellant argues that two Tennessee cases, ***Williams v. Tennessee Bd. of Med. Examiners***, No. 92-3372-I, 1994 WL 420910 (Tenn. Ct. App. Aug. 12, 1994), and ***Rich v. Tennessee Bd. of Med. Examiners***, 350 S.W.3d 919 (Tenn. 2011), support his contention that the Board's decision is not supported by substantial and material evidence. Both of these cases, however, address a situation in which a physician already licensed to practice in Tennessee was disciplined by the Board for allegedly unethical conduct, and the Board was required to articulate the alleged deviation "in order to provide the physician under investigation a fair opportunity to respond to a charge of negligence." *Rich*, 350 S.W.3d at 928. As such, these cases are distinguishable from the present matter in that no one has ever accused Appellant of any unprofessional conduct such that Appellant would need to respond to such an allegation. Rather, the issue in the present case was whether Appellant had sufficient experience to gain initial licensure in emergency medicine in Tennessee; moreover, Appellant was placed on notice that his work history was a concern for the Board at least a year before the contested case hearing. Consequently, the foregoing cases are unpersuasive under the circumstances.

The order of the Davidson County Chancery Court denying Appellant relief from the Board's final order is hereby affirmed. Costs of this appeal are taxed to Appellant, Andres Perez, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE