IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 20, 2019 Session

## IN RE JUSTINE J. ET AL.

**Appeal from the Chancery Court for Hawkins County**
**No. 2017-AD-39      Douglas T. Jenkins, Chancellor**

———————————————————

**No. E2019-00306-COA-R3-PT**

———————————————————

This termination of parental rights case involves two children.  Father/Appellant appeals the trial court's termination of his parental rights on the ground of abandonment by willful failure to support and willful failure to visit.  Because Father did not receive sufficient notice of the grounds for termination of his parental rights, we vacate the trial court's order and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

Amy Kathleen Skelton, Rogersville, Tennessee, for the appellant, Justin J.

Gerald T. Eidson, Rogersville, Tennessee, for the appellees, Dena J., and Thomas J.

## OPINION

### I. Background

J.T.J. (d/o/b December 2004) and J.F.J. (d/o/b July 2007) (together, the "Children") were born to Appellant Justin J. ("Father") and Dena J. ("Mother").[1]  Mother and Father were never married.  The Children were born in New York; while living there, both Father and Mother were incarcerated for separate periods of time.  During one of Father's incarcerations, Mother relocated to Tennessee with the children and married

———

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

Thomas J. (together with Mother, "Appellees").

On October 23, 2017, Appellees filed a petition to terminate Father's parental rights and for adoption. As grounds, Appellees alleged abandonment by willful failure to visit and willful failure to support "for a period over four (4) months prior to the filing of this Petition." The trial court appointed a guardian ad litem for the Children and an attorney for Father on his pauper's oath.

On April 23, 2018, Father filed a response in opposition to the petition to terminate his parental rights. The matter was set for hearing on June 27, 2018. At the hearing, Father made an oral motion to dismiss the petition on the ground that the petition failed to comply with statutory and local rules concerning pleadings in termination of parental rights cases. In response to Father's oral motion to dismiss, at the June 27 hearing, Appellees made an oral motion to amend their petition, and the case was continued to October 3, 2018 for trial. On October 1, 2018, Father filed a written motion to dismiss.[2] On October 2, 2018, one day before trial, Appellees filed an "addendum" to their petition to terminate Father's parental rights. As is relevant to this appeal, in their addendum, Appellees allege, for the first time, that "the period of time that the Respondent's actions and omissions have occurred are from January 20, 2016 to the filing date of this petition," which was October 23, 2017.

The case was heard on October 3, 2018. By order of February 1, 2019, the trial court terminated Father's parental rights on the grounds of abandonment by willful failure to visit and willful failure to support. The trial court found that the relevant four-month period was "September 13, 2015 to January 13, 2016." Father appeals.

## II. Issues

Father raises six issues as stated in his brief:

1. Did the trial court err by denying the Father's Motions to Dismiss for fatal defects in the Petition.
2. Did the trial court err by allowing the trial to proceed when the relevant four-month window to determine visitation and support could not be determined—and was not provided to the Father—until the trial began.
3. Did the trial court err by concluding that there was clear and convincing evidence that the Father willfully failed to support the minor children.
4. Did the trial court err by concluding that there was clear and convincing evidence that the Father abandoned the minor children due to willful failure

---

[2] Although there is no written order denying Father's motion to dismiss, based on the fact that the petition to terminate his parental rights proceeded to trial on the merits, we infer that the motion was, in fact, denied by the trial court.

to visit.

5. Did the trial court err by concluding that clear and convincing evidence existed that the termination of the Father's parental rights was in the best interests of the minor children.

6. Did the trial court err by failing to prepare an order specifically listing the Court's conclusions of law and findings of fact—and instead filed a transcript of his oral findings of fact from the trial—as required by Tennessee Code Annotated § 36-1-113(k).

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653.

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or

as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Defects in the Petition

In his first appellate issue, Father argues that Appellees' petition to terminate his parental rights was defective in that it failed to include information mandated by statute. Accordingly, Father contends that the trial court erred in denying his motion to dismiss the petition. To the extent this issue requires interpretation or application of statutes, it is a question of law, which we review *de* novo with no presumption of correctness regarding the trial court's findings. *See **Pickard v. Tennessee Water Quality Control Bd.***, 424 S.W.3d 511, 518 (Tenn. 2013) (citing **Myers v. AMISUB (SFH), Inc.**, 382 S.W.3d 300, 308 (Tenn. 2012)).

Tennessee Code Annotated section 36-1-113 addresses the information that must be included in a petition to terminate parental rights and provides, in relevant part:

[d](2)(A) The petition to terminate parental rights **shall** state:

***

(iv) Any other facts that allege the basis for termination of parental rights and that bring the child and parties within the jurisdiction of the court;
(v) Any notice required pursuant to subdivision (d)(4) has been given . . .

***

(3)(A) The petition to terminate parental rights must state that:

(i) The Tennessee putative father registry has been consulted prior to the filing of the petition or will be consulted within ten (10) days thereafter unless the biological father has been identified through DNA testing as described in § 24-7-112 and that identification is set out in the petition; and a copy of the response to this inquiry shall be provided to the court immediately upon receipt by the petitioner; and

***

(C) The petition to terminate, or the adoption petition that seeks to terminate parental rights, shall state that:

(i) The petition or request for termination in the adoption petition, if granted, shall have the effect of forever severing all of the rights, responsibilities, and obligations of the parent or parents or the guardian or

guardians to the child who is the subject of the order, and of the child to the parent or parents or the guardian or guardians;

(ii) The child will be placed in the guardianship of other person, persons or public or private agencies who, or that, as the case may be, shall have the right to adopt the child, or to place the child for adoption and to consent to the child's adoption; and

(iii) The parent or guardian shall have no further right to notice of proceedings for the adoption of the child by other persons and that the parent or guardian shall have no right to object to the child's adoption or thereafter, at any time, to have any relationship, legal or otherwise, with the child.

(Emphasis added).

In addition to the foregoing statutory requirements, Third Judicial District Chancery Local Rule of Practice 16.02 provides that

[i]n any case wherein the adopting parents are related to the child or children to be adopted, the case shall not be set for adjudication by the Clerk until the following documents have been filed:

(A) The birth certificate or certificates of the child or children.
(B) A certified copy of the marriage license of the adopting petitioner(s), if applicable.
(C) A certified copy of any current order/judgment affecting the custody of the child/children.
(D) A death certificate if either natural biological parent be deceased.
(E) A copy of the Putative Father Registry report within ten (10) days of the filing of the petition.
(F) Any confidential report, filed at least three (3) days prior to the adoption hearing.

Finally, the Rules of Civil Procedure provide:

Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation of any statute, ordinance or

- 5 -

regulation is claimed shall be set forth.

Tenn. R. Civ. P. 8.05(1).

In his motion to dismiss, Father avers that Appellees' petition fails to comply with the foregoing statutory provisions and rules in that:

1.  [T]he petition does not state the specific grounds being alleged to terminate [Father's] parental rights.
2. [T]he petition does not mention the marriage date of the petitioners.
3. [T]he petition does not mention the [Mother] consenting to adoption.
4. [T]he petition does not mention whether the children were born in or out of wedlock.
5.  [T]he petition does not list attorney fees, nor is an affidavit regarding attorney fees on file.
6.  [T]he petition does not state the results from the Putative Father Registry.  According to the statute, the registry is to be consulted within ten (10) working days of the filing of the Petition.  Furthermore, as of the filing of this Motion to Dismiss no results have been filed regarding the Putative Father Registry.  Additionally, [Father] alleges that this requirement cannot be waived . . . .
7.  [T]he petition does not state the mandatory language required by this statute: "The Petition to terminate, or the adoption petition that seeks to terminate parental rights, shall state that the parent or guardian shall have no further right to notice of proceedings for the adoption of the child by other persons and that the parent or guardian shall have no right to object to the child's adoption or thereafter, at any time, to have the relationship, legal or otherwise, with the child."
8.  Pursuant to the Third Judicial District Chancery Local Rules of Practice Section 16.02, the Petitioners have not supplied this Honorable Court with copies of birth certificates for the minor children as required by local rules.
9.  Pursuant to the Third Judicial District Chancery Local Rules of Practice Section 16.02, the Petitioners have not supplied this Honorable Court with a certified copy of their marriage license as required by local rules.
10.  Pursuant to the Third Judicial District Chancery Local Rules of Practice Section 16.02, the Petitioners have not supplied this Honorable Court with a certified order regarding custody of the minor children as required by local rules.
11.  Pursuant to the Third Judicial District Chancery Local Rules of Practice Section 16.02, the Petitioners have not supplied this Honorable Court with results from the putative father registry.

Appellees do not contest the mandatory language of the foregoing rules and

statutes concerning the content of petitions to terminate parental rights, nor do they specifically deny that their original petition was rife with omissions. In ***In re Natalie R. C.***, No. E2011-01185-COA-R3-PT, 2011 WL 4924170 (Tenn. Ct. App. Oct. 18, 2011), this Court vacated the trial court's termination of father's parental rights based on numerous defects in the petition. In so doing, we stated that

> [p]erhaps one of the deficiencies alone might have constituted harmless error, but we are not prepared to hold that a petition to terminate parental rights can suffer these multiple deficiencies and remain valid.
>
> We first note the mandatory language of the rule and statutes in question, something not contested by Grandmother. Also, we observe that terminating parental rights is an especially grave and serious matter. The United States Supreme Court has described "the interest of parents in the care, custody, and control of their children" to be "perhaps the oldest of the fundamental liberty interests recognized by this Court." ***Troxel v. Granville***, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Our General Assembly and our Supreme Court have made certain policy decisions concerning what must be included in a petition to terminate parental rights. However technical these omissions may seem, given the number of omissions considered in the context of a termination of parental rights, they may not be overlooked or excused. We, however, do not agree with Father that these defects are fatal and require the petition to be dismissed. These defects are such that they can be corrected by Grandmother and her current attorney if given the opportunity, and they choose to do so. Our decision provides that opportunity.

***In re Natalie R. C.***, 2011 WL 4924170, at *5. Likewise, in this case, the trial court did not initially grant Father's motion to dismiss Appellees' petition to terminate his parental rights. Rather, the trial court allowed Appellees the opportunity to amend their petition to correct the errors and omissions. The question, then, is whether the amended petition was sufficient to cure the deficiencies and to provide adequate notice to Father so that he could prepare his defense. As is relevant to this appeal, Appellees' addendum to the petition states that "the period of time that [Father's] actions and omissions have occurred such that are grounds for termination of parental rights, are from January 20, 2016 to the filing date of this Petition." On appeal, Father contends that Appellees' "addendum" to the petition was insufficient to cure the pleading deficiencies. Specifically, he maintains that the addendum concerning the four-month statutory period for the abandonment ground was not properly pled. Furthermore, he argues that the addendum, which was filed on the eve of the hearing, violated his due process right to notice.

"Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" ***Keisling v. Keisling***, 92 S.W.3d 374, 377

(Tenn. 2002) (citing *State v. Pearson*, 858 S.W.2d 879, 884 (Tenn. 1993) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Further, "[d]ue process is a flexible concept that 'calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Wilson v. Wilson*, 984 S.W.2d 898, 902 (Tenn.1998)). This Court has previously discussed the importance of strictly adhering to procedural requirements in termination of parental rights cases. *See In re Johnny K. F.*, No. E2012-02700-COA-R3-PT, 2013 WL 4679269, at *7 (Tenn. Ct. App. Aug. 27, 2013); *Weidman v. Chambers*, No. M2007-02106-COA-R3-PT, 2008 WL 2331037, at *6 (Tenn. Ct. App. June 3, 2008). "Providing notice of the issues to be tried is considered a fundamental component of due process." *In re Landon H.*, No. M2011-00737-COA-R3-PT, 2012 WL 113659, at *4 (Tenn. Ct. App. Jan. 11, 2012) (citing *In re W.B. IV.*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005)). The touchstone of the due process requirement is that the parent be placed on notice of the ground in order to prepare a defense. *Id.*

As discussed above, in their original petition, Appellees averred that Father abandoned the Children by failure to provide support and failure to visit "for a period over four (4) months prior to the filing of this Petition." In their "addendum" to the petition, Appellees stated that the period of time for abandonment is "from January 20, 2016 to the filing date of this Petition." The question of the applicable time period remained unsettled at the time of the hearing on the petition. At the outset of the hearing, Father's attorney contested the four month period provided in the addendum and stated that the Father was incarcerated during the "January 20, 2016 to the filing date of the petition" time period. As such, Father asserted that Appellees "didn't say what period they're talking about. They're talking about in their petition the period while he was incarcerated, so they still never told us what period they're looking at." In denying Father's renewed motion to dismiss, the following transpired:

> THE COURT: Well, that's—I think he's on notice.
>
> ***
>
> [APPELLEES' ATTORNEY]: Your Honor, we're alleging the time in paragraph ten [of the addendum], from January 20, 2016 to the filing date of the petition.
> [FATHER'S ATTORNEY]: He was incarcerated.
> THE COURT: Well, but listen, here's—here is the way we deal with this. First of all, let me, the motion respectfully is overruled . . . your original petition, it does put the defendant on notice that they're claiming he has not paid any child support and it puts the defendant on notice that they're claiming he's not visited . . . . Now, the statute tells us that if the defendant's incarcerated at any time during the four months preceding the

filing of the petition, that we're to keep backing it up in time until we find four months where defendant was not incarcerated, so we may have to go back to . . .

[FATHER'S ATTORNEY]: 2014.

THE COURT: . . . conception, I don't know, but what . . . from your [i.e., Father's attorney's]—what would be your thought on that how far we have to back up to do that?

[FATHER'S ATTORNEY}: We'd have to go back to 2014 and during that time, before that incarceration, he was seeing his children regularly and paying support.

THE COURT: Well, let's just see what the proof shows and whatever the proof shows we're stuck with. . .[Appellees' attorney], do you agree that he was incarcerated steadily from '14 up to when the thing was filed?

[APPELLEES' ATTORNEY]: We don't agree, Your Honor.

\*\*\*

THE COURT: Well, then that's obviously one of the facts at issue the Court's going to have to ascertain in this case. So, I guess, we're going to have to—usually, we agree on this four-month period, but I guess it's contested, and I'll have to determine when it was.

[FATHER'S ATTORNEY]: But even then, technically, this should have been dealt with by discovery and figuring it out before we come to trial, so that we know what the four-month period would have been in this case.

THE COURT: Your vindication is you don't have the burden of proof, so you don't have to prove anything here today . . . .

In its order terminating Father's parental rights, the trial court found that, "The relevant period of time that the Court used was the period from September 13, 2015 to January 13, 2016." These dates were never pled by Appellees and were strictly derived from the proof adduced at the hearing concerning Father's incarceration. Father's attorney was correct that the relevant four-month time period should have been determined prior to the hearing and should have been specifically pled by Appellees. It was not. As such, Father never had notice of the relevant time period.

In *In re D.H.B.*, No. E2014-00063-COA-R3, 2015 WL 1870303 (Tenn. Ct. App. April 23, 2015, this Court addressed the question of whether a petition to terminate parental rights, which alleged the wrong four-month period for abandonment, was sufficient to put the mother on notice of the grounds for termination of her parental rights. In relevant part, we stated:

Mother asserts that the Petitioners' pleadings failed to provide her with proper notice of the specific ground for termination being pursued.

- 9 -

Addressing abandonment pursuant to Section 36-1-102(1)(A)(iv), this Court has observed that "[t]he statute is very specific for an incarcerated parent with regard to the relevant time period, limiting the analysis with regard to a failure to support to the period of 'four (4) consecutive months immediately preceding such parent's or guardian's incarceration. . . .'" Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010). *In re Eimile A.M.*, No. E2013-00742-COA-R3-PT, 2013 WL 6844096, at \*3 (citing Tenn. Code Ann. § 36-1-102(1)(A)(iv)). We have held that "courts must 'strictly apply the procedural requirements in cases involving the termination of parental rights.'" *Id.*, (quoting *In re: Landon H*., No. M2011-00737-COA-R3-PT, 2012 WL 113659, at \*4 (Tenn. Ct. App. Jan. 11, 2012)).

Here, the original petition alleged only "abandonment" of the Children. When pressed for more specificity, Petitioners amended the petition, for a second time, to allege abandonment by failure to visit or support in the four months immediately preceding the filing of the petition. Although the proof at trial revealed that Petitioners were well aware of Mother's repeated periods of incarceration, abandonment by an incarcerated parent was not specifically alleged in the pleadings. Mother argues that the petition failed to provide her with adequate notice of the particular grounds for termination she was called upon to defend. In a case involving the same two forms of abandonment, we have held a petition to be deficient where the "wrong" four-month statutory period is pleaded. See *In re K.N.B*., No. E2014-00191-COA-R3-PT, 2014 WL 4908505, at \*13 (Tenn. Ct. App. E.S., filed Sep. 30, 2014).

*In re D.H.B.*, 2015 WL 1870303, \*4-5.[3]

Despite the fact that Appellees were given the opportunity to amend their original petition, the amended petition is insufficient to put Father on notice of the grounds asserted for termination of his parental rights. As in *In re D.H.B.*, neither the original petition, nor the addendum thereto lists the correct four-month period, which was ultimately determined by the trial court to be September 13, 2015 to January 13, 2016. Furthermore, although it is undisputed that Father was incarcerated for some period of time, Appellees did not plead abandonment by an incarcerated parent. In fact, Appellees' pleadings fail to cite the any statutory provisions as required by Tenn. R. Civ. P. 8.05(1). In *In re K.N.B.*, this Court held:

---

[3] In *In re D.H.B.*, this Court ultimately held that the grounds for termination of Mother's parental rights were tried by consent of the parties and upheld the termination. Here, however, based on the portion of the transcript set out above, there was no consent to the dates, and the relevant four-month period was not determined until after the hearing.

- 10 -

With all due respect to the trial court, it is clear to us that abandonment by an incarcerated parent was not properly pleaded as a ground for terminating Father's rights to K.N.B. Despite obtaining evidence that Father served time in jail within the four months before it filed for termination, DCS did not allege as a basis for severing his parental rights that Father failed to support or visit the child in the four months before he was incarcerated. On the contrary, DCS specifically alleged that Father was not incarcerated during the four months before the petition was filed. In this manner, DCS focused its attention and its proof at trial on the "wrong" statutory four-month period as a ground of abandonment.

Neither do we believe that the issue of whether Father abandoned the child in the four months before he went to jail was tried by consent. Instead, it appears that, at trial, evidence of Father's criminal history was introduced primarily on the issue of DCS's efforts to locate Father in order to provide him with a permanency plan and the required notice of the definition and potential consequences of abandonment, all as discussed earlier in this opinion. In its ruling, noting Father's March 8 sentencing, the trial court observed, "[s]o we know where [Father] was then." The court continued, "the reason that I am making reference to these criminal convictions is . . . in trying to find out why [DCS] didn't locate [Father] and why they were unable to locate him. . . ." When evidence is introduced at a trial on a relevant issue, it cannot be relied upon to show consent to try an issue that was not pleaded. *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. Ct. App. 1995) (citing *Ray v. The Kroger Co*., No. 83-323-II, 1984 Tenn. App. LEXIS 2966 at *19 (Tenn. Ct. App. M.S., filed June 26, 1984) ("Trial of an issue by consent is not shown by presentation of evidence which is relevant to an established issue and also would be relevant to an unexpressed issue.")).

As we see it, the trial court essentially took an "either/or" approach when it terminated Father's rights to the child K.N.B. on the grounds of abandonment by willful failure to support and willful failure to visit during the four months immediately preceding the filing of the petition or in the four months prior to his incarceration. On the record before us, this was error. In short, there is evidence that Father was incarcerated during the four months before the petition was filed, and the ground of abandonment by an incarcerated parent was neither properly pleaded nor tried by consent. We therefore reverse the trial court's judgment terminating Father's parental rights to K.N.B. on the ground of abandonment pursuant to Tenn. Code Ann. 36-1-113(g)(1), as defined in Tenn. Code Ann. § 36-1-102(1)(A)(i).

*In re K.N.B.*, 2014 WL 4908505, \*13.  The same is true here.  By applying the time period of September 13, 2015 to January 13, 2016, which was prior to Father's incarceration, the trial court (despite the fact that its order does not specifically cite the abandonment by an incarcerated parent statute) terminated Father's parental rights on this ground.  Appellees never pled abandonment by an incarcerated parent, and the ground was not tried by consent of the parties.  *Id.*  Furthermore, Appellees pled incorrect four month periods in both their original petition and the addendum.  *In re D.H.B.*, 2015 WL 1870303, \*4-5.  Because Father did not receive adequate notice to defend against the termination of his parental rights, we vacate the trial court's order.  All remaining issues are pretermitted.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's order terminating Father's parental rights and remand the case for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed to the Appellees, Dena J. and Thomas J., for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE